841 So.2d 881 (2003)
STATE of Louisiana
v.
Mario A. MARSHALL.
No. 02-KA-1067.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*884 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Peter R. Borstell, Law Offices of Douglas Schmidt, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and MARION F. EDWARDS.
THOMAS F. DALEY, Judge.
Defendant, Mario A. Marshall, appeals his conviction of possession of cocaine with intent to distribute. On appeal, he assigns four errors:
1. The State did not prove beyond a reasonable doubt that appellant possessed the cocaine that was found at 3401 Edenborn Ave., Apt. 304, Metairie, Louisiana.
*885 2. The State further did not prove beyond a reasonable doubt that the Appellant intended to distribute the cocaine found at said apartment.
3. The trial court committed reversible error by admitting evidence of other crimes pursuant to L.S.A.C.E. 404.
4. The trial court gave appellant an excessive sentence.
Considering the law and the evidence, we find that the evidence was sufficient to support the jury's conclusion that defendant was in constructive possession of the cocaine found in the Metairie apartment, and that this cocaine was packaged in a way consistent with distribution. We also find that the introduction of other crimes evidence was not error. Finally, defendant's sentence was not excessive. Therefore, we affirm defendant's conviction and sentence.
The charge against defendant in this case was the result of a joint investigation by the New Orleans Police Department and the Jefferson Parish Sheriff's Office. Sergeant Charles Little (Sergeant Little) testified that he is commander of the Narcotics Unit of the New Orleans Police Department's Third District. Based on information his division received, Sergeant Little and other narcotics officers initiated a surveillance on defendant, Mario Marshall, at 11:45 p.m. on October 30, 2000.
Sergeant Little testified that defendant was in a green Ford Explorer, parked near 518 South Murat Street in the Mid-City area of New Orleans. A subject named Barry Bowie (Bowie) was a passenger in the vehicle. Sergeant Little stated that he had seen defendant in the Explorer on several previous occasions. Sergeant Little saw Bowie pour something into an orange juice bottle. Bowie then exited the vehicle and leaned against the front fender. After 10 to 15 minutes, defendant exited the vehicle, crossed South Murat Street, and met with an unknown black male. The men conversed briefly, although Sergeant Little could not hear what they said.
The black male reached into his right pants pocket, removed a single bill, and handed it to defendant. Defendant placed the money in his right front pants pocket. Defendant then removed a clear plastic bag from the back of his pants and pulled out a small object. He handed the object to the black male. The man examined it, and then left the scene on foot. Defendant returned the plastic bag to the back of his pants. Defendant sat on the front steps of the residence at 518 South Murat Street. A short time later, a woman exited the house and joined defendant on the steps.
Sergeant Little continued to watch the house, and he saw an unknown man and woman arrive. He watched the group for several minutes, and then ordered the other surveillance officers to move in and detain defendant and Bowie. The men were transported to the Task Force and Narcotics offices at the Third District station. Sergeant Little ordered Detectives Martin, Vappie, and Davis to conduct a strip search of defendant's person in the men's bathroom there. Sergeant Little did not participate in the search.
Detective Jules Martin (Detective Martin) testified that defendant was led into the bathroom in handcuffs. Once inside, Detective Martin removed the handcuffs. He ordered defendant to remove his shirt and to unbutton his pants. Defendant unbuttoned his pants as instructed, but then reached into the area of his buttocks and retrieved a bag containing what appeared to be cocaine. Defendant quickly put the cocaine to his mouth.
Detective Martin testified that he knew ingestion of cocaine could be fatal, and that he also believed defendant was attempting *886 to destroy evidence. He, therefore grabbed defendant in an attempt to prevent him from swallowing the contraband. A struggle ensued. Defendant began to chew the substance. When Detective Martin tried to remove the bag from defendant's mouth, defendant bit him. Detective Martin and the other officers present were eventually able to subdue defendant and secure the evidence. The material was field tested, and the result was positive for cocaine. Detective Martin testified that a little over half an ounce of cocaine was seized. Defendant also had $18.00 in cash and a set of keys on his person at the time of his arrest.
Deputy Joseph Lopinto (Deputy Lopinto) testified that he is assigned to the Narcotics Division in the Detective Bureau of the Jefferson Parish Sheriff's Office. He testified that, during October, 2000, he conducted a surveillance on an apartment at 3401 Edenborn Drive in Metairie, where he believed defendant resided. During that time, Deputy Lopinto passed the apartment complex 15 to 20 times. He also set up five or six extended surveillances at that location. He watched for a green Ford Explorer.
During his extended surveillances, Deputy Lopinto saw defendant on three occasions. At those times, defendant left the apartment complex, driving the Explorer. Deputy Lopinto followed defendant to a location in the Mid-City area of New Orleans. Deputy Lopinto determined that the Explorer was registered to Yale Washington, who was defendant's wife. The officer noted that the telephone number at the Edenborn apartment was also registered to Ms. Washington.
Deputy Lopinto testified that, on October 30, 2000, he was contacted by Detective Jules Martin (Detective Martin) of the New Orleans Police Department. Based on what Detective Martin told him, he went to the Third District station in New Orleans. Deputy Lopinto learned that Detective Martin's investigation of defendant had led to a seizure of crack cocaine. Based on the New Orleans arrest, Deputy Lopinto applied for and obtained a Jefferson Parish search warrant for the Edenborn apartment. Detective Martin gave Deputy Lopinto the keys seized from defendant.
Deputy Lopinto went to the Edenborn apartment in the early morning hours of October 31, 2000, in order to execute the search warrant. He was accompanied by Detectives Robby Gerdes and Bruce Harrison, and Lieutenant Timmy Miller. The officers knocked on the door. When they received no response, they used the keys seized from defendant to gain entry. They found Yale Washington and an infant inside the apartment.
Ms. Washington led the officers to where cocaine and currency were hidden. Deputy Lopinto testified that a coffee maker above the refrigerator held 38 individually wrapped rocks of what appeared to be crack cocaine, along with currency and other items. They found a total of $830.00, most of which was in small denominations. The rocks were field tested, and the result was positive for cocaine. On the kitchen table, the officers found a card addressed to Mario and Yale Marshall at 3401 Edenborn. Deputy Lopinto testified that he also found and seized a package of plastic bags located on top of the refrigerator, next to the coffee maker.
Criminalist Edgar Dunn, an expert in the identification and analysis of controlled dangerous substances, testified that he tested a sampling of the rocks seized at the Edenborn apartment, and that the results were positive for cocaine. Detective Bruce Harrison, an expert in the use, packaging, distribution, and valuation of narcotics, testified that, in his opinion, the *887 amount of cocaine found during the search, and the manner in which it was packaged, were indicative of possession with intent to distribute.
ASSIGNMENT OF ERROR NUMBER ONE
The State did not prove beyond a reasonable doubt that appellant possessed the cocaine that was found at 3401 Edenborn Ave., Apt. 304, Metairie, Louisiana.
ASSIGNMENT OF ERROR NUMBER TWO
The State further did not prove beyond a reasonable doubt that the Appellant intended to distribute the cocaine found at said apartment. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223 (La.App. 5 Cir. 6/30/99), 742 So.2d 604.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, supra. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438.
In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court commented:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id.

The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. State v. Manson, 01-159, p. 16 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761; State v. Snavely, 99-1223, p. 11 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 958, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840. Guilty knowledge is an essential element to the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Manson, supra. Possession can be either "actual" or "constructive." State v. Brisban, 00-3437, p. 8 (La.2/26/02), 809 So.2d 923, 929.
A person not in physical possession of a drug may have constructive possession when the contraband is under the person's dominion and control. State v. Schieffler, 00-1116, p. 4 (La.App. 5 Cir. 2/13/02), 812 So.2d 7, 9. The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence *888 that the area was frequented by drug users. Id; State v. Manson, 01-159 at pp. 6-7, 791 So.2d at 761.
The evidence supports a finding that defendant had dominion and control over the cocaine seized in the apartment sufficient to constitute constructive possession. Deputy Lopinto testified that he watched the apartment complex on Edenborn on numerous occasions during the month leading up to defendant's arrest. On at least three occasions, he saw defendant leave the complex in a green Ford Explorer. Deputy Lopinto learned the Explorer was registered to Yale Washington, defendant's wife.[1]
The telephone at the Edenborn apartment was registered to Ms. Washington. Police found mail addressed to defendant and his wife at the apartment. Some of the items bore the Edenborn address, indicating a connection between defendant and the apartment. Moreover, defendant was in possession of the key to the apartment when he was arrested in New Orleans. Defendant's wife and son were inside of the apartment when officers arrived to execute the search warrant.
Defendant argues that the contraband was found in the kitchen, a public area of the apartment to which defendant did not have exclusive access. It is true that being a resident of the premises where drugs are found is not in and of itself sufficient to prove constructive possession. State v. Kelly, 01-321, p. 4 (La. App. 5 Cir. 10/17/01), 800 So.2d 978, 982, writ denied, 01-3266 (La.11/1/02), 828 So.2d 565. Moreover, while it can be inferred that a defendant lives at a residence where contraband is discovered because his spouse lives there, there must be direct evidence (such as utility bills or other correspondence mailed to the defendant at that address), to support a finding of constructive possession. See, State v. Martin, 98-1507 (La.App. 4 Cir. 4/5/00), 788 So.2d 1. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. Id. From the evidence that Ms. Washington had the lease on the Edenborn apartment, that she and defendant were married, that defendant came and went to and from the apartment at will, that he frequently used Ms. Washington's truck, and that mail was found at the apartment addressed to defendant, it can be inferred that defendant and Ms. Washington shared the residence.
While Ms. Washington knew where the cocaine was hidden, it was defendant who was found in possession of cocaine by New Orleans officers, and who was seen engaging in what appeared to be a narcotics sale on South Murat Street. These facts strongly support the jury's conclusion that the cocaine in the apartment belonged to defendant, and that his wife shared with him knowledge of and access to the contraband.
Some of the mail seized at the apartment was addressed to defendant at 1025 South Clark Street and at 4219 D'hemecourt Street in New Orleans. Brenda Price testified that in October 2000, defendant was living with her and her brother at the Clark Street address. Ms. Price further testified that her sister lived at the D'hemecourt address. Detective Harrison testified that it is common practice for drug dealers to sell their goods in one neighborhood, and to reside in an area removed from the place where their drug deals are *889 made. Detective Harrison stated that the place where the defendant actually lives is referred to as a "stash house," "drop house," or a "safe house."
While it is possible that defendant stayed from time to time at the South Clark and D'hemecourt addresses, the evidence tends to show that the Edenborn apartment was his "stash house." This would explain why Deputy Lopinto did not, during his surveillance activities, see defendant engage in any drug transactions at the Edenborn address. It would also explain why no evidence of drug use (such as paraphernalia) was found in the search. Deputy Lopinto testified that he regularly followed defendant from Metairie to the Mid-City area in New Orleans. Sergeant Little and Detective Martin saw defendant frequently in Mid-City, and it was in that area that Sergeant Little saw defendant conduct a drug transaction. Based on the foregoing, the evidence is sufficient to support the element of possession.
Defendant argues that the State failed to prove he had specific intent to distribute cocaine. In State v. Hearold, 603 So.2d at 735, the Louisiana Supreme Court listed a series of factors that might give rise to a reasonable inference that a defendant had the specific intent to distribute a controlled dangerous substance:
(1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Snavely, 99-1223 at p. 12, 759 So.2d at 958.
Sergeant Little saw defendant engage in what appeared to be a drug transaction at 518 South Murat Street in New Orleans. Defendant was then arrested, and found to possess a relatively large amount of crack cocaine on his person. This is evidence that defendant was a cocaine dealer. It satisfies the first of the aforementioned criteria. With respect to the fifth factor, Deputy Lopinto testified that a package of plastic sandwich bags was found on top of the refrigerator, next to where the crack was hidden. The three remaining criteria are covered by the testimony of Detective Bruce Harrison, an expert in the use, packaging, distribution, and valuation of narcotics.
Detective Harrison testified that the most important factors he looks at in determining whether an individual is selling or simply using narcotics are the quantity of drugs recovered, and the manner in which they are packaged. Detective Harrison further stated that if the quantity of drugs is large enough, he assumes distribution is involved, regardless of the packaging.
According to Detective Harrison, a drug user is not likely to possess a larger amount of narcotics than he can readily use. Users buy drugs in small increments as they are able to obtain the money to feed their habits. A user is also generally fearful of possessing a large quantity of narcotics, as this would make him susceptible to robbery or arrest. Finally, a user is rarely without the paraphernalia (such as a crack pipe) necessary to use the drugs. Detective Harrison testified that someone who has a large quantity of narcotics, but *890 none of the associated paraphernalia, is generally a dealer.
The prosecutor presented Detective Harrison with the facts of the instant case in the form of a hypothetical situation. Detective Harrison testified that, if an individual were found to have 15 grams of cocaine on his person, and 38 individually wrapped rocks of crack were found in his residence, it would indicate to him that the individual was involved in distribution. Detective Harrison explained that if the possessor of this cocaine had plans to use it all himself, he would not have gone to the trouble of cutting it into individual pieces and packaging each piece separately in plastic. A typical user would leave the substance in one large piece and cut off one piece at a time as he smoked it. Detective Harrison testified that the quantity and packaging of the rocks were, to him, indicative of distribution.
Defendant argues that Detective Harrison's testimony conflicts with that of Criminalist Edgar Dunn (Dunn), who testified that the gross weight of the individually wrapped rocks was 6.61 grams. Dunn further testified that he estimated the weight of the cocaine, without the wrapping, to be no more than two grams. Detective Harrison examined State's Exhibit 1, the 38 individually wrapped rocks of crack. He estimated, based on his experience, that the rocks weighed about .2 grams each, and that they were fairly large for sale on the street.[2] They would sell for at least $20.00 each. Detective Harrison testified that he has weighed plastic "baggies," and that a whole baggy weighs .7 grams. Detective Harrison noted that something less than a whole baggy was used in the wrapping in State's Exhibit 1.
When Detective Harrison was asked how much each of the 38 rocks would weigh if the total weight amounted to Dunn's estimated two grams, he testified that each piece would be approximately .05 grams. Detective Harrison said a rock that size would sell for about $5.00 on the street. However, he has never encountered a situation in which rocks that small were sold on the street. Detective Harrison testified that he did not feel two grams of crack was indicative of intent to distribute, but that factors such as packaging might change his opinion. Neither Dunn nor Detective Harrison testified that he actually weighed the crack without the plastic wrap. Therefore, their testimony regarding the net weight of the cocaine (i.e., without the plastic wrapping) in evidence was based on estimation. It appears the jury gave more credence to Detective Harrison's testimony regarding the weight, deferring to his considerable hands-on experience with narcotics sales.
Detective Harrison testified that a street to mid-level dealer would generally have cash in small denominations, based on the nature of their transactions. A total of $830.00 was found with the cocaine during the search of the Edenborn apartment. In all, there were two $100.00 bills, twenty $20.00 bills, twelve $10.00 bills, nineteen $5.00 bills, and fifteen $1.00 bills. Detective Harrison testified that those denominations were consistent with distribution. A dealer generally has a large number of tens and twenties, with the occasional $100.00 bill.
Based on Detective Harrison's testimony, as well as the testimony regarding defendant's actions before and after his arrest in New Orleans, the evidence was sufficient to support the jury's verdict that *891 defendant had specific intent to possess cocaine with the intent to distribute.
ASSIGNMENT OF ERROR NUMBER THREE
The trial court committed reversible error by admitting evidence of other crimes pursuant to LSA-C.E. art. 404.
DISCUSSION
Defendant argues that the admission of detailed testimony regarding his arrest in New Orleans constituted reversible error, as it was inadmissible "other crimes" evidence, used by the state to bolster its case against him. Evidence of other crimes committed by the defendant is generally not admissible at trial. LSA-C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, when such evidence tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Silguero, 608 So.2d 627, 629 (La.1992); State v. Aleman, 01-743, p. 8 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1064.
LSA-C.E. art. 404 B(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Under Prieur, the State must satisfy several requirements before other crimes evidence may be admitted at trial. The first is to provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. One of the factors enumerated in Article 404 B(1) must be at issue, have some independent relevance, or be an element of the crime charged. State v. Jackson, 625 So.2d 146, 149 (La.1993); State v. Maise, 99-734, p. 13 (La.App. 5 Cir. 3/22/00), 759 So.2d 884, 893, writ granted, 00-1158 (La.9/14/01), 795 So.2d 1219, judgment aff'd, 00-1158 (La.1/15/02), 805 So.2d 1141.
The probative value of the extraneous evidence must outweigh its prejudicial effect. State v. Maise, 99-734 at p. 13, 759 So.2d at 894. The burden is on the defendant to show he was prejudiced by the trial court's admission of Prieur evidence. State v. Temple, 01-655, p. 20 (La. App. 5 Cir. 12/12/01), 806 So.2d 697, 709.
Prior to trial, the State filed a Notice of Intent to Use Evidence of Other Crimes, detailing defendant's activities and his arrest on South Murat Street in New Orleans in the early morning of October 31, 2000. On September 21, 2001, the court heard the matter. The State presented testimony by Detective Jules Martin regarding the events leading up to defendant's New Orleans arrest. The parties stipulated to the police incident report made in connection with that arrest. The report detailed the joint investigation conducted by the Jefferson Parish Sheriff's Office and the New Orleans Police Department.
The defense argued that the State did not show any connection between the narcotics seized from defendant after his New Orleans arrest and the cocaine found at *892 the Edenborn apartment. The State argued that the evidence was admissible under C.E. art. 404 B to show knowledge and intent. The State further argued that the probative value of the evidence was not outweighed by any prejudicial effect it might have on defendant's case. The trial court ruled, "The Court, under 404(B), will allow the evidence in as showing evidence of plan, knowledge, intent, motive and preparation of the defendant. And I think it meets the criteria of 404(B)."
The trial court did not err in allowing admission of evidence relating to defendant's New Orleans arrest. The evidence was relevant for a purpose other than to show that defendant committed the charged offense, or that he was simply a bad person. The testimony that defendant was seen engaging in what appeared to be a drug transaction, and was subsequently found to be in possession of cocaine, was valid to show specific intent to sell the cocaine found in the Edenborn apartment, an element of the charged offense. The fact that defendant was arrested in possession of a key to the apartment also went toward proving defendant had knowledge of the cocaine hidden in the apartment.
It is arguable that the evidence at issue was admissible under the doctrine formerly known as res gestae. When evidence of other crimes or bad acts tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted. State v. Charles, 00-1586, p. 5 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 708. A close connexity between the charged and uncharged conduct is required to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Noten, 01-1818, p. 2 (La.6/25/01), 791 So.2d 607, 609 (per curiam) (quoting State v. Haarala, 398 So.2d 1093, 1097 (La.1981)).
In the instant case, Jefferson and Orleans Parish law enforcement worked together in investigating defendant. Defendant's arrest in Orleans Parish was used as a basis for the search warrant in Jefferson Parish. The New Orleans arrest and accompanying seizure of cocaine from defendant's person formed part of a chain of events connecting the surveillance of the defendant as he sold drugs on South Murat Street to the recovery of the evidence at the Edenborn apartment. The arrests in Orleans and Jefferson Parishes possess the close connexity required under res gestae. See, State v. Noten, supra. This Assignment of Error has no merit.
ASSIGNMENT OF ERROR NUMBER FOUR
Defendant argues that his 30-year habitual offender sentence is excessive, given his age, family ties, and the fact that he does not have a history of violence.[3]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly *893 disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). The trial judge is given wide discretion in determining a sentence, and if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. LSA-C.Cr.P. art. 881.4 D; State v. Richmond, 98-1051, p. 8 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 38. Factors an appellate court may consider in reviewing the sentencing judge's discretion are: 1) the nature of the crime, 2) the nature and background of the offender,[4] and 3) the sentences imposed for similar crimes by the same court and other courts. State v. Ulmer, 99-1079, p. 4 (La.App. 5 Cir. 1/25/00), 751 So.2d 1017, 1019.
In imposing the habitual offender sentence, the trial judge commented:
I vacate the sentence previously given of 20 years at hard labor in this matter and sentence him to 30 years at hard labor after considering all of the guidelines of 894.1 of the Code of Criminal Procedure, including all of his past, and I am going to say all of his past arrests, which have been admitted in the record, I know with objection by counsel, and his prior convictions.
The numerous prior arrests to which the judge referred were contained in the Criminal History Report and police rap sheets introduced by the State, and admitted by the court at defendant's original sentencing. Many of the arrests listed in those reports were for minor municipal offenses. However, there were also arrests for possession of narcotics, aggravated battery, aggravated criminal damage, aggravated assault, aggravated burglary, and flight from an officer. The documents show there were numerous outstanding attachments for defendant for various offenses.
Defendant argues his sentence is severe, considering the relatively small amount of cocaine recovered at the Edenborn apartment. In State v. George, 34,621 (La.App. 2 Cir. 4/4/01), 785 So.2d 975, however, the court affirmed a 30-year sentence for a first felony offender who sold only $20.00 worth of cocaine to an undercover police officer. The trial judge noted that the defendant had a lengthy criminal record (at least eight prior felony convictions). In affirming the sentence, the court of appeal pointed out that the defendant had "demonstrated that he is not capable of leading a law-abiding life" because the record showed he had spent his entire adult life either committing crimes or in prison. George, 34,621 at p. 7, 785 So.2d at 980. See also, State v. Champ, 01-434, p. 6 (La.App. 5 Cir. 11/27/01), 803 So.2d 167, 170. Based on the foregoing, the trial judge did not abuse his sentencing discretion.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defense witness Brenda Price, defendant's aunt, testified that defendant was married to Yale Washington, and the couple had a son named Mario. She further testified that the couple separated in October 2000.
[2] Detective Harrison testified that he has weighed thousands of street level rocks this size, and that they have generally weighed between .1 and .2 grams.
[3] It is noted that defendant did not file a written Motion to Reconsider Sentence, nor did he make a specific oral motion as prescribed by LSA-C.Cr.P. art. 881.1. Such an omission normally precludes review of a sentence on appeal. See, State v. Ewens, 98-1096, p. 10 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La. 10/8/99), 750 So.2d 179. However, this Court has routinely reviewed sentences for constitutional excessiveness even absent a defendant's compliance with Article 881.1. State v. Anderson, 01-789, p. 8 (La.App. 5 Cir. 1/15/02), 807 So.2d 956, 961.
[4] A sentencing judge may consider a defendant's prior convictions, as well as past criminal behavior which did not result in a conviction. State v. Anderson, 02-273, p. 7 (La.App. 5 Cir. 7/30/02), 824 So.2d 517, 522; State v. Gilbert, 00-1822, p. 5 (La.App. 5 Cir. 1/16/01), 788 So.2d 574, 577.