842 So.2d 1222 (2003)
STATE of Louisiana, Appellee,
v.
Simmie L. ANDERSON, III, Appellant.
No. 36,969-KA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2003.
*1225 J. Wilson Rambo, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Brian Harkins, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY and DREW, JJ.
CARAWAY, J.
After a bench trial, Simmie Anderson ("Anderson") was convicted of the crimes *1226 of possession of marijuana and phencyclidine ("PCP") with intent to distribute in violation of La. R.S. 40:966 and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. Anderson was adjudicated a second felony offender and received concurrent sentences of fifteen years at hard labor without benefit of probation or suspension of sentence on the two drug counts and ten years at hard labor, without benefit of parole, probation or suspension of sentence on the firearm conviction.[1] After the denial of his timely motion for reconsideration of sentence, Anderson appealed raising as error, among other matters, the sufficiency of the evidence of his constructive possession of the drugs and gun. For the following reasons, we affirm the convictions and sentence imposed for the felon possession of a firearm conviction. However, we set aside the habitual offender adjudication and sentences for the possession of marijuana and PCP with intent to distribute convictions and remand for resentencing and adjudication since enhancement under the habitual offender law in this case may apply to only one of those convictions.

Facts
On November 3, 2000, the Metro Narcotics Unit of the Monroe Police Department executed a search warrant for a house owned by Anderson. No one was at the residence. During the search of the house, police found what laboratory tests later determined to be nineteen grams of marijuana contained in two small plastic bags, seventy-two grams of PCP contained in a small bottle and placed in a cowboy boot, a bottle of Ivomel, a syringe and two needles found in the refrigerator, a partially smoked marijuana cigarette, one package of More brand cigarettes, two types of scales and one gun. The police also found mail belonging to Anderson and other personal effects. The seized gun was a Lorcin.380 caliber pistol and was found under the mattress of a bed in the home. On November 15, 2000, Anderson called police and indicated he wanted to turn himself in. Thereafter, Anderson was arrested. At the time of his arrest, Anderson listed the address of the raided residence as his home address.

Discussion: Sufficiency of the Evidence
On appeal, Anderson argues that the evidence was insufficient to convict him because the state failed to prove that he resided in the residence. He thus contests the finding of his constructive possession of the drugs and the gun. He also insists that the state did not establish the requisite intent to distribute the marijuana.
In brief, Anderson concedes that he has failed to file a motion for post-judgment verdict of acquittal. The question of sufficiency of the evidence is properly raised by such a motion. La. C. Cr. P. art. 821. Nevertheless, this court will consider sufficiency arguments even in the absence of such a motion. State v. Henry, 36,217 (La.App.2d Cir.8/14/02), 823 So.2d 1064. When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992).
The standard of appellate review for a sufficiency-of-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, *1227 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant is guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992). For circumstantial evidence to convict, it must exclude every reasonable hypotheses of innocence. La. R.S. 15:438.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984).
The crime of possession with intent to distribute a Schedule I drug requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. State v. Dennis Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201; State v. Marshall, 02-1067 (La.App. 5th Cir.2/25/03), 841 So.2d 881
Regarding the element of possession of a controlled dangerous substance, the state need not prove the defendant was in physical possession of the narcotics found; constructive possession is sufficient to support a conviction. Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge can be inferred from the circumstances. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910. A determination of possession sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that the drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. Id. A subject can have constructive possession if he wilfully and knowingly shares with a companion the right to control the drugs. State v. Marshall, supra.
It is unlawful for any person who has been convicted of any violation or attempted violation of the Uniform Controlled Dangerous Substances Law, which is a felony, to possess a firearm or carry a concealed weapon. La. R.S. 14:95.1. The state can prove possession of a firearm by a convicted felon by either actual or constructive possession. Constructive possession of a firearm is demonstrated when the state shows the firearm was subject to defendant's dominion and control. State v. Ean Johnson, 36,854 (La.App.2d *1228 Cir.3/14/03), 839 So.2d 1247. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if the control is shared. State v. Neeley, 30,008 (La.App.2d Cir.12/23/97), 704 So.2d 443, 447. La. R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2); State v. Neeley, supra at 448.
The state's case for constructive possession of the drugs and gun centered on the testimony of Detective Mark Johnson ("Johnson"), the Monroe police officer who executed the search warrant at the residence and discovered the drugs in the home. Johnson testified that his search of the house produced mail and loan papers in the name of Anderson and Anderson's photograph. Johnson also testified that he found only male clothing in the home, including three or four sets of City of Monroe Water Department uniforms which bore Anderson's first name. In support of the officer's testimony, the state introduced into evidence copies of the documents and photograph found in the house. These included loan documents reflecting that Anderson alone purchased the McGuire Avenue property. Additionally, police found a hospital bill, addressed to Anderson at the McGuire Avenue residence and postmarked October 16, 2000. The Lorcin .380 automatic pistol was purchased on December 5, 1996 by Anderson and registered in his name. The gun was located under the mattress of the bed in the master bedroom. The state also introduced into evidence a piece of mail addressed to Anderson at the McGuire Avenue location and postmarked October 31, 2000, as well as a water bill for the McGuire Avenue home in the name of Anderson and dated October 13, 2000.
In support of his claim that he had no knowledge regarding the drugs and gun, Anderson presented the testimony of three witnesses who stated that he did not reside at the house at the time of the raid. These witnesses included Anderson's brother, Ron Brothers, and girlfriend, Nedra Jones. Additionally, a neighbor of Jones, Irene Dennis, also testified. Brothers stated that Anderson never stayed at the house where the drugs were found at 1511 North McGuire because he lived with Nedra Jones on 8th Street. Brothers also claimed that on August 21, 1997, Anderson sold him the Lorcin .380 found in the house. Anderson introduced into evidence a document which purported to memorialize the sale. Brothers also explained that Anderson and his father bought the McGuire Avenue house together. Anderson's father, who was also called as a defense witness, confirmed Brothers' statement regarding his co-ownership of the house, but could provide no information as to whether or not Anderson resided there. Nedra Jones also testified that Anderson lived with her on 8th Street. She stated that they were living together on November 3, 2000. Dennis testified that Anderson lived with Jones from October of 1999 until the time of trial.
Anderson also testified. He admitted that he knew he should not own a gun after his 1997 conviction and therefore sold his Lorcin .380 to Brothers in 1997. Anderson stated that he lived with Jones at her 8th Street address since December of 1999. He admitted to signing the deed on the McGuire Avenue house, but claimed that he merely acted as overseer of the property for his father. Anderson testified that the last time he had been to the McGuire Avenue house was a week before November 3, 2000 to take care of a problem *1229 with the security alarm at the residence. He denied having any pictures of himself or work uniforms at the house. On cross-examination, Anderson admitted that when he bonded out of jail on the present charges, he gave the North McGuire address as his residence.
A final defense witness, Tanya Ard, was Anderson's ex-girlfriend and mother of his two children. She stated that she left Anderson in December, 1999. Nevertheless, she and the children stayed off and on overnight at Anderson's McGuire Avenue house since 1999 and recalled spending the night at the house in October and early November of 2000. Ard also stated that Nedra Jones and Anderson's brothers would stay there too. Ard testified that Anderson worked at the Monroe City Water Department. She had previously observed PCP in a vanilla extract bottle in the McGuire Avenue home and had in fact seen PCP the week before police executed the search warrant. She knew that Anderson kept the PCP in his bedroom closet in a vanilla extract bottle placed in a shoe box. She also observed scales under the cabinet in the house; she saw Anderson weigh marijuana and crack on the scales. Ard recalled Anderson selling drugs between August and November of 2000. She stated that Anderson sold drugs from McGuire Avenue. She also knew Anderson had a Lorcin .380 under the mattress and that the gun was registered in Anderson's name.
Comparing the state's evidence with the defense testimony, there exist opposing views of Anderson's dominion and control over the McGuire Avenue residence and his constructive possession of the seized drugs and gun. Nevertheless, the testimony of the defense witnesses regarding Anderson's nonresident status for the McGuire Street house is contradicted by the presence of numerous personal effects suggesting Anderson's residency in the home. The search of the residence revealed that only one bedroom contained clothes and indicated that only one person resided there. The clothes included Anderson's work clothing exhibiting his name. Additionally, Officer Johnson's testimony revealed that his search of the residence was prompted by information from a confidential informant who identified Anderson's dealings with PCP and marijuana and his possession of the .380 handgun. Despite its hearsay character, an informant's tip, when proven accurate, may be used by the trier-of-fact in support of the conviction. State v. Butler, 99-1794 (La.5/1/00), 760 So.2d 322. Finally, it is significant to note that the trial court indicated in its oral ruling that little credibility could be given to the ex-girlfriend's testimony. After claiming her access to the residence, her exculpatory accusations against Anderson were properly recognized as untrustworthy.
Faced with conflicting evidence concerning Anderson's dominion and control over the residence, the trial court could make credibility determinations rejecting the defense testimony which suggested that other persons had more direct access to the residence. We decline to disturb these credibility determinations. When credited by the court, Johnson's testimony is sufficient to prove beyond a reasonable doubt that Anderson resided in the house with dominion and control over the drugs and gun so as to establish proof of constructive possession. Therefore, we reject this portion of Anderson's argument.
When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use. State v. Dennis Johnson, supra. Intent to distribute *1230 illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. Id. Factors useful in determining whether the state's circumstantial evidence is sufficient to prove intent to distribute include (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. Id.
In proof of Anderson's intent to distribute marijuana, the state qualified Officer Johnson as an expert in the distribution of narcotics. He stated that the street value of the marijuana seized in the home was $40.00. He had earlier testified that the total amount of marijuana seized in the plastic bags was 19 grams. He explained that at the street level, marijuana is found in clear plastic bags or marijuana cigars. He testified that in distribution cases, it is very common to find scales because the drug dealer wants to make sure he is distributing the right amount of marijuana. As part of his expertise, Johnson was able to identify the smell of marijuana. At trial, he smelled the distinct odor of marijuana on one of the scales seized in the McGuire Avenue home. Johnson explained that users do not weigh marijuana, but dealers do. While the marijuana was packaged in a manner consistent with personal use, it was found in conjunction with other things like the scale and other packaging material consistent with street level distribution. In fact, the marijuana seized in this case was packaged in a manner consistent with intent to distribute. Finally, as indicated above, Johnson testified that he had received information from other drug suspects and confidential informants that Anderson was distributing marijuana.
When viewed in the light most favorable to the state, we find this evidence sufficient to prove that Anderson possessed the requisite intent to distribute marijuana. The expert testimony is adequate to prove that the marijuana was packaged in a manner consistent with intent to distribute. Additionally, the evidence establishes that the marijuana was located near scales which were obviously used to measure the drug. The marijuana was found in association with the large quantity of PCP, which further indicates distribution activity. When viewed in its entirety, we find this circumstantial evidence sufficient to establish that Anderson possessed the specific intent to distribute marijuana.

Habitual Offender Adjudication
On appeal, Anderson challenges the use of his prior conviction for attempted possession of cocaine as a predicate offense because this offense was relied upon by the state to support his conviction for possession of firearm by a convicted felon. Thus, he contends that the state illegally used the same felony conviction to enhance punishment twice.
On February 8, 2002, the state charged Anderson as a second felony offender, using his 1997 conviction of attempted possession of cocaine to enhance only the convictions for possession of PCP and marijuana with intent to distribute. Notably, the same attempted possession of cocaine conviction formed the underlying felony in the firearm possession conviction. On April 22, 2002, Anderson sought to quash the habitual offender bill on the same grounds now urged on appeal. After hearing arguments prior to the habitual offender hearing, the trial judge denied *1231 the motion. We find no error in this ruling.
In this case, the 1997 drug conviction was proven as an element of Anderson's firearm conviction. That conviction had nothing to do with the subsequent enhancement of sentences for the two drug convictions. The firearm conviction was not the subject of the state's habitual offender bill, only the two drug convictions. We are aware that jurisprudence holds that the La. R.S. 14:95.1 firearm conviction may not be used to enhance the penalty for a subsequent conviction if the underlying felony used as an element in the firearm conviction is also used in the same multiple bill. State v. Hymes, 513 So.2d 371 (La.App. 4th Cir.1987). Nevertheless, the present firearm conviction was not used in Anderson's multiple bill/habitual offender proceeding. Therefore, we find no merit in Anderson's argument regarding an impermissible double enhancement of punishment.
We do note as error patent, however, that Anderson could not be adjudicated a habitual offender and receive enhanced sentences on the two drug offenses which arose out of one criminal episode. The jurisprudence of Louisiana precludes habitual offender enhancement of more than one conviction obtained the same date arising out of a single criminal act or episode. Multiple convictions obtained the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing. State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991). Accordingly, we set aside the adjudications and sentences for the drug offenses, and remand the case to the district court for resentencing on these two convictions, with adjudication and sentencing as a habitual offender on only one of the drug convictions.

Excessive Sentence
Anderson also contends that the remaining sentence imposed by the trial court for his possession of a firearm by a convicted felony is excessive. For this offense, the trial court imposed the statutory minimum sentence of ten years at hard labor. Specifically, Anderson contends that the trial court failed to consider his work history, property ownership and law-abiding life as mitigating factors in sentencing and erred in denying his request for downward departure from the mandatory sentencing provisions due to his limited intellectual ability.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a reviewing court may not set aside a sentence. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158.
It is well established that the determination and definition of acts which are punishable as crimes is a purely legislative function. It is the legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Courts are charged with applying these punishments unless they are found to be unconstitutional. State v. Dorthey, *1232 supra; See also State v. Walter Johnson, 97-1906 (La.3/4/98/), 709 So.2d 672.
In the context of the habitual offender law, the supreme court has stated that in order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that:
[He] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Walter Johnson, supra at 676.
On appeal, Anderson argues that these principles also apply to his sentencing on the felon possession of a firearm conviction. We agree that such reasoning can be read to extend to any legislatively-mandated minimum sentence. Nevertheless, in this case, we find no merit to Anderson's argument.
Prior to imposing sentence, the court stated that it had reviewed a pre-sentence investigation report ("PSI") which included Anderson's social and criminal history. The court also considered La. C. Cr. P. art. 894.1 factors as guidance in determining whether downward departure from the statutory minimum sentences was appropriate. In addition to Anderson's prior 1997 conviction, the court also considered Anderson's previous conviction for DWI and his arrests for traffic matters and disturbing the peace. In reviewing the Article 894.1 factors, the court determined that in this case, any lesser sentence than that imposed would deprecate the seriousness of the gun possession offense involved.
In mitigation, the court considered Anderson's lack of education which is the basis for Anderson's argument that he was the exceptional defendant for which downward departure from the sentencing guidelines was appropriate. The court pointed out that even though Anderson did not graduate from high school, documentation in Anderson's PSI showed Anderson to be an average student who scored well on the California Achievement Test. A committee also determined that Anderson would do well in a GED program. The court also considered Anderson's work history in mitigation which showed his ability to keep a job. The court also regarded the testimony of Anderson's brother and mother which was presented at the sentencing hearing. Despite these factors, the court declined to depart from the mandatory minimum sentencing provisions.
The documentation mentioned by the court belies Anderson's claim that he has limited intellectual capabilities which make him the exceptional defendant for which downward departure is appropriate. Clearly, the abilities which he possessed not only qualified him for a GED program, but allowed him to perform satisfactorily in a work environment. Even if considered in mitigation, we agree with the trial court's determination that these factors are outweighed by the seriousness of the offenses and Anderson's obvious propensity toward drug activity which remained unaffected by prior probationary treatment. To depart downward from the mandatory sentencing provisions would, in this case, deprecate the seriousness of the offense involved. Accordingly, we find no merit to Anderson's claim that the trial court erred in failing to depart from the mandatory minimum sentencing provisions of La. R.S. 14:95.1. This determination, however, in no way precludes further review of Anderson's sentence upon his resentencing in accordance with this opinion.

*1233 Conclusion

For the foregoing reasons, we affirm Anderson's three convictions and the sentence imposed for the firearm conviction. We vacate the habitual offender adjudication and sentences on the two drug charges and remand the case to the trial court for a habitual offender adjudication and sentence on only one of the drug charges and resentencing on the other drug conviction.
CONVICTIONS AFFIRMED; SENTENCE IMPOSED FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED; HABITUAL OFFENDER ADJUDICATION SET ASIDE; REMANDED FOR FURTHER PROCEEDINGS AND RESENTENCING.
NOTES
[1] On November 20, 1997, Anderson pled guilty to attempted possession of cocaine and received a suspended two year sentence.