|, STEWART, J.
Richard Pigford (“Pigford”) was convicted of possession of marijuana with the intent to distribute, and sentenced to eight years at hard labor, from which he now appeals. For the reasons that follow, we find that the evidence was insufficient to support the defendant’s conviction and sentence, and we reverse and render a judgment of acquittal.
FACTS
On September 25, 2000, a computer weight monitoring station set up on 1-20 by the weight and standards division of the state police, registered an eastbound Volvo eighteen-wheeler 3000 pounds over the state weight limit of 80,000 pounds. The vehicle, driven by the defendant, was directed to pull over into the nearest weight station. Carol Pigford, the defendant’s wife and the registered owner of the tractor, was a passenger in the vehicle. The record does not establish the registered owner of the trailer. The trailer was not sealed, but was locked only with a padlock. The defendant had the key to the padlock.
The truck was weighed on the stationary scales at the weight station, and again determined to be 3,000 pounds overweight. The defendant was directed to pull over and stop the truck, and to get out with his papers. Sergeant Brierre Thomas, with the Department of Transportation, Weights and Standards Unit, and Deputy Danny Williams, a K-9 officer with the Caddo Parish Sheriffs Office, interviewed the defendant. The defendant told them he was traveling to New York; however, the bill of lading showed the defendant was hauling a load of grapes from California to Pennsylvania.
| ^Because they were concerned about the discrepancy in the destination and cargo given by the defendant and the destination on the bill of lading and that the defendant seemed to be traveling “out of his way” to get to New York, Sergeant Thomas and Deputy Williams asked the defendant to open the back of the trailer, so they could see what he had as cargo. The defendant refused to open the trailer, telling the officers he was a member of the NAACP, and *727 that he knew he had a right to refuse to allow the search. In fact, at the hearing on the defendant’s motion to suppress, Sergeant Thomas admitted that he and Deputy Williams had no authority to make the defendant open the trailer.
Immediately after the defendant refused to open the trailer, Sergeant Thomas called Peggy Adley, an agent with the Public Service Commission. She was across the interstate at the westbound weight station. Sergeant Thomas testified that the reason he called her was that she would need to know what was in the trailer; the company the defendant drove for was not a familiar company, and that Ad-ley would need to check his “single state registration” and insurance, and inspect his load to see if it matched his bill of lading. Sergeant Thomas told her that he had a trucker who was refusing to open the trailer, and he had conflicting statements about the load and the destination.
Officer Adley arrived in a couple of minutes and inspected Pigford’s papers. Af-terwards, she told him that she had the right to inspect the trailer without his consent, so he unlocked the padlock and opened the doors. The trailer contained a load of boxes of grapes, stacked nearly to the top of the |3trailer. Officer Adley did not inspect the load, but asked Officer Thomas to do so. Officer Thomas climbed up onto the back of the trailer and looked at the load. As Sergeant Thomas inspected the load, he either saw or felt a large package sitting on top of the boxes of grapes, less than an arm’s length from the back end of the load. The package was wrapped in clear plastic wrap and duct tape, and was about a foot wide and six- and-a-half to seven feet long. The package was not visible until Sergeant Thomas got up onto the back of the trailer.
Sergeant Thomas asked the defendant about the package, and the defendant told him he didn’t know anything about it. Carol Pigford also denied knowing any^ thing about the package. Sergeant Thomas and Deputy Williams pulled the package down. One of the bundles in the package was opened up, revealing marijuana. The total weight of marijuana was approximately 52 pounds, with a street value of $52,000. The defendant and his wife were arrested for possession of marijuana with the intent to distribute. After the arrest, the defendant’s bill of lading was determined to be in good order. No fingerprints were found on the package.
Prior to the trial, Pigford filed a motion to suppress that was denied by the trial court. During the time leading up to the trial, Pigford retained and fired three different attorneys before deciding to represent himself in defense of the charges against him. The trial court strongly warned the defendant that he was facing a serious felony charge and that he needed counsel. In fact, the trial court offered to continue the matter to allow the defendant to consider getting new counsel.
I ¿Nonetheless, Pigford responded by stating that he still wanted to represent himself. The trial court then advised the defendant he would be tried by a jury unless he specifically waived the right, and that he had a right to subpoena witnesses. After the trial court further advised the defendant of the delays in subpoenaing witnesses, he was allowed to represent himself.
After several delays, trial began on November 19, 2002. On November 18, 2002, the defendant made an oral motion to be appointed counsel, which was argued and denied by the trial court. The trial court advised the defendant as to the proper procedure in conducting a jury voir dire.
The transcript reveals that Pigford put forth a more than adequate defense for *728 himself, displaying a significant level of confidence and proficiency in using the rules of evidence to impeach witness testimony, assert objections, and effectively cross examine witnesses. Pigford attacked the credibility of the officers involved, and argued that the state’s evidence could not exclude the possibility that the marijuana was put in the trailer by someone who helped load the trailer.
On cross examination of Sergeant Thomas, Pigford established that the load of grapes came through a broker. He also established that an overweight load was a common occurrence, usually involving writing a citation and letting the trucker leave. The defendant also established that although Sergeant Thomas had just testified that the marijuana was in “plain view,” it was actually on the top of the load of grapes, two or three feet |sabove his head, and was discoverable only by reaching over with his hand and feeling around.
The defendant got Deputy Williams to admit that it was possible that someone loading the load could have placed the marijuana into the truck while the defendant was sorting out the paperwork, and someone else could have taken the marijuana off at the other end, and “... the defendant would never have known what he was carrying.” The defendant also got Williams to admit that he did not remember if he ever asked the defendant if he watched the truck being loaded.
The next witness for the state was Agent Peggy Adley, enforcement agent for the Louisiana Public Service Commission. On cross examination, the defendant, despite objections by the state, got Agent Adley to admit that the package of marijuana was not in “plain view” and was not visible to someone standing on the ground. The defendant also got Agent Adley to acknowledge that she found nothing wrong with his paperwork.
The defendant chose not to return to finish the trial, but fled the state instead. The trial court completed the trial in the defendant’s absence. The jury convicted the defendant as charged. The defendant was represented by counsel during his sentencing where he was sentenced to eight years at hard labor. Pigford then filed a pro se motion for new trial.
On April 29, 2004, this court on a writ of mandamus, noted that the applicant was sentenced, and the appeal granted, before the trial court heard “... an unidentified post-trial motion.” The writ was granted “... solely to remand the matter to the district court to give it jurisdiction to act on the Ifipost-trial motion.” State v. Pigford, 38,933-KH (La.App.2d Cir.4/29/04). On May 18, 2004, the trial court heard and denied the defendant’s motion for new trial, and resentenced the defendant to eight years at hard labor. This appeal followed.
DISCUSSION

Insufficiency of evidence

Pigford argues the evidence failed to establish that he constructively possessed the marijuana found in the trailer full of grapes. We agree.
Our finding that the evidence was insufficient as a matter of law pretermits a discussion of the other issues raised by the instant appeal.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 *729 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 1997-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own ^appreciation of the evidence for that of the fact finder. State v. Robertson, 1996-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Anderson, 36,969 (La.App.2d Cir.4/9/03), 842 So.2d 1222. For circumstantial evidence to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
|sTo be guilty of possession of a controlled dangerous substance, one need not actually possess the contraband; constructive possession is sufficient to convict. Constructive possession means having an object subject to one’s dominion and control, with knowledge of its presence, even though it is not in one’s physical possession. State v. White, 37,261 (La.App.2d Cir.6/25/03), 850 So.2d 987.
A determination of whether there is “possession” sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Toups, 2001-1875 (La.10/15/02), 833 So.2d 910.
It is always the function of the jury to assess the credibility of witnesses and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La.1993). Where the trier of fact has made a rational determination, an appellate court should not disturb it. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Thomas, supra; State v. Combs, 600 So.2d *730 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
1¡¿Possession with intent to distribute is defined in La. R.S. 40:966(A)(1) which provides:
A. Manufacture; distribution. Except as authorized by this Part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I;
The facts of this case pose an unusual constructive possession problem; that is, can a truck driver engaged in hauling cargo in interstate commerce be found to constructively possess drugs found hidden in the cargo, absent any evidence of knowledge of the drugs, and based solely on the truck driver having access to the trailer? The answer to this question could have far-reaching implications to interstate commerce. In the present case, the defendant’s eighteen-wheeler was stopped for an overweight load. The defendant had a key to the door of the trailer. A search of the trailer uncovered 52 pounds of marijuana. The defendant denied knowledge of the drugs. The state adduced no other evidence.
The case is readily distinguishable from the many reported cases where a private vehicle is pulled over and searched and drugs or other contraband are found in the interior compartment or the trunk of the vehicle. The case is also distinguishable from cases where an eighteen-wheeler is searched and drugs are found in the cab of the tractor, not the trailer or cargo area. See State v. Cash, 2003-853 (La.App. 3d Cir.12/10/03), 861 So.2d 851.
| inThe obvious problem is that one cannot apply private vehicle case law regarding constructive possession to drugs found in the cargo area of a common carrier involving the transportation of goods or persons. It should be noted that all of the cases cited by the state in support of the conviction involve constructive possession of drugs found in the interior compartment or the trunk of private passenger vehicles. None address the issue in this case, where drugs were found hidden in a cargo area among forty tons of someone else’s produce, loaded into the cargo area by someone other than the driver.
The cargo area of a vehicle licensed and used in interstate commerce may be accessed by numerous other people involved in the loading and unloading of that cargo area. The mere fact that the driver of such a vehicle may also have access to the cargo area of his vehicle is not sufficient proof of constructive possession of any contraband subsequently found in the cargo. To convict, there must be some other evidence to preclude the possibility that the contraband was put there by third persons during the loading of the cargo, or evidence proving the driver’s knowledge of the contraband in the cargo area. To convict a driver only on the evidence that he had access to the cargo area creates a dangerous precedent for the many drivers involved in commercial transportation of goods that happen to have access to the cargo they are carrying.
As we have found no state appellate cases addressing the instant issue, we look to other courts for guidance. Specifically, the United States Fifth Circuit, in addressing this issue, has consistently required more Inevidence than the truck driver merely having access to the trailer. In U.S. v. Morales, 854 F.2d 65 (5th Cir. 1988), the Fifth Circuit affirmed the conviction of a truck driver found carrying 386 pounds of marijuana in a trailer-load of *731 onions, because the government adduced testimony from the employees that loaded the onions into the trailer, to establish that the marijuana was not put in the trailer when the onions were loaded. The Fifth Circuit found that from this evidence, the jury could have reasonably inferred that the marijuana was placed in the trailer after the driver took possession of the load.
In U.S. v. Moreno-Hinojosa, 804 F.2d 845 (5th Cir.1986), the Fifth Circuit reversed the government’s conviction of a passenger in an eighteen-wheeler found to be carrying 400 pounds of marijuana in an empty trailer noting that the government did not make any showing, even circumstantially, that Moreno had any knowledge that the vehicle he was riding in was involved in the distribution of marijuana.
In U.S. v. Carreon-Palacio, 267 F.3d 381 (5th Cir.2001), the Fifth Circuit affirmed a conviction of a truck driver involved in the transportation of 1,200 pounds of marijuana based on the additional evidence that the truck driver, and his truck, were seen near the site where the marijuana was loaded, and the marijuana was wrapped in trash bags identical to trash bags pm-chased by the truck driver at a nearby store, just prior to the marijuana being loaded.
We note that the state did not present a thorough case, perhaps because it was dealing with a defendant representing himself. Nonetheless, 112no effort was made to adduce evidence to establish that the marijuana was not present in the trailer when the grapes were loaded. As a result, the defendant was even able to get the state’s witness to acknowledge that it was possible that the marijuana was put in the trailer by the people who loaded the grapes. The state’s evidence does nothing to exclude that possibility.
The officers testified that the defendant denied any involvement in loading the grapes, and nothing in the evidence establishes that he was present at the loading other than the fact that he picked up the load. The defendant’s fingerprints were not found on the package. Nor was the package in clear view from the ground when locking or unlocking the trailer doors. Mere presence in the area where narcotics are discovered is insufficient to support a finding of possession. However, the fact finder may draw reasonable inferences based upon the evidence presented at trial. State v. White, supra. The state has given scant evidence to draw any reasonable inference that the defendant either possessed or had actual knowledge of the marijuana in the trailer.
The ownership of property in which the contraband is found is also a factor to consider in determining constructive possession. State v. Anderson, 36,969 (La.App.2d Cir.4/9/03), 842 So.2d 1222. It is noteworthy that, although the state adduced evidence that the Volvo tractor was licensed in North Carolina to the defendant’s wife, no evidence was adduced to establish ownership of the trailer, which the bill of lading shows was licensed in Florida. The evidence in the record does not preclude the 1 ^possibility that the defendant may have backed his Volvo tractor up to someone else’s loaded trailer, hitched the trailer to his tractor, locked the trailer doors, and driven off. As such, we cannot say that the evidence was sufficient as a matter of law to sustain the defendant’s conviction and sentence.
CONCLUSION
For the foregoing reasons, we reverse the defendant’s conviction and sentence and enter a judgment of acquittal.
REVERSED AND RENDERED.