MARC E. JOHNSON, Judge.
12Pefendant appeals his convictions and sentences for possession of cocaine and being a felon in possession of a firearm from the 24th Judicial District Court, Division “N”. For the following reasons, defendant’s convictions and sentences are affirmed.

STATEMENT OF THE CASE

On August 6, 2008, the Jefferson Parish District Attorney filed a bill of information charging defendant, Darren Robinson, with possession of cocaine in excess of 200 grams, but less than 400 grams, in violation of LSA-R.S. 40:967(F) (count two), and possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1[1] (count three). On August 21, 2009, defendant was arraigned and pleaded not guilty. Subsequent to pleading not guilty, defendant filed several pre-trial motions, including motions to suppress statement and evidence, which were denied.
|sOn the morning of trial, the State amended the bill of information to include a second predicate offense to defendant’s felon in possession of a firearm charge. The defendant objected to the amendment and moved for a continuance which the trial court denied. The matter proceeded to trial on counts two and three before a 12-person jury on March 10-11, 2010. After considering the evidence presented, the jury found the defendant guilty as charged, on both counts.
On March 12, 2010, defendant filed a motion for new trial.[2] Defendant’s motion for new trial was denied in open court on March 16, 2010. After waiving sentencing delays, defendant was sentenced, as to count two, possession of cocaine in excess of 200 grams but less than 400 grams, to 30 years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence, in addition to a $300,000 fine; and as to count three, possession of a firearm by a convicted felon, defendant was sentenced to 15 years imprisonment at hard labor, without benefits, to be served concurrently to count two, in addition to a $1,000 fine.
After sentencing, the State filed two habitual offender bills of information which were set for hearing on March 25, 2010. The defense filed notice of objections to the habitual offender bills. Pursuant to LSA-R.S. 15:529.1, on March 25, 2010, the trial court found defendant to be a quadruple offender as to count two and a double offender as to count three. Thus, the trial court vacated the defendant’s original sentences as to counts two and three and re-sentenced defendant. In regards to count two, defendant was sentenced to 60 years imprisonment at hard labor, with the first 10 years to be served without the benefit of probation, parole, or suspension of sentence, and the remaining time to be Lserved without the benefit of probation or suspension of sentence, with credit for time served. As for count three, the trial court re-sentenced defendant to 30 years *889 imprisonment at hard labor, the first 15 years to be served without the benefit of probation, parole, or suspension of sentence, with the remaining 15 years to be served without the benefit of probation or suspension of sentence, with credit for time served, and in accordance with LSA-R.S. 15:529.1. The trial court further ordered that defendant’s sentences as to counts two and three be served concurrently. On the same date, but prior to defendant’s re-sentencing, defendant’s motion to reconsider defendant’s original sentences was denied.
On March 24, 2010, defendant filed a motion for appeal which was granted by the trial court.[3] The defendant now timely appeals his convictions and sentences.

FACTS

Lieutenant Danny Jewell, of the Jefferson Parish Sheriff’s Office Narcotics Division, testified that on August 4, 2009, he and his investigative team attempted to set up a surveillance of Darren Robinson, the defendant, at his assumed address, 3232 Kentucky Avenue in Kenner, Louisiana. When the surveillance proved futile, they attempted to relocate the surveillance to a second known address, 1110 Demarco Street in Marrero. However, when they were approximately one block from 1110 Demarco Street, Lieutenant Jewell observed the defendant pulling into a gas station at the intersection of Westwood and the Westbank Expressway.
Having had prior dealings with the defendant in the past, Lieutenant Jewell approached the defendant at the gas station, advised him of his Miranda[4] rights, Land placed him under arrest for five outstanding attachments. The defendant then gave the officers verbal consent to search his vehicle. A K-9 drug dog was used to search defendant’s vehicle, and although the K-9 positively alerted to two locations in the vehicle, no narcotics were found. Lieutenant Jewell testified that while no narcotics were found inside the vehicle or on the defendant’s person, the officers seized $2,205.00 in cash and a cell phone from the defendant’s person, a rental agreement (in the name of Sharon Robinson), a second cell phone, a set of keys, and a tally sheet from inside the vehicle defendant was driving. After conducting the search of the vehicle, Lieutenant Jewell testified that he asked the defendant where he lived to which he responded that he lived at 1110 Demarco Street with his mother and wife, Sharon Robinson. Based on this information, Lieutenant Jewell drove to 1110 Demarco Street where he spoke with Diane Robinson, the defendant’s mother, but was unable to make contact with Sharon Robinson, the defendant’s wife. Lieutenant Jewell testified that Diane Robinson told him that neither the defendant nor Sharon Robinson lived with her, but rather lived in “Metairie somewhere.”
After speaking with the defendant’s mother, Lieutenant Jewell testified that he and Sergeant Klein relocated to 3232 Kentucky Avenue, in Kenner, while the remainder of his investigative team stayed behind at 1110 Demarco Street. Upon arrival at 3232 Kentucky Avenue, Maria *890 Lewis, Sharon Robinson’s sister, opened the door. Lieutenant Jewell asked to speak with Sharon Robinson, who upon learning of the defendant’s arrest, agreed to a cursory weapon search of the home while a search warrant was being prepared. While conducting the weapon search, two pistols were retrieved from the top of an armoire located in the master bedroom. Jewell obtained a search warrant for the home, and upon executing the warrant, discovered that one of the keys retrieved from the vehicle driven by ^defendant opened the deadbolt to the front door of the home. According to Lieutenant Jewell, photographs of the home were taken and then a search of the house was conducted.
Pursuant to the search, the following items were seized: the two firearms previously identified during the weapon search, $10,000 in cash, paperwork (addressed to either the defendant or Sharon Robinson and with the Kentucky Avenue address on it), a large quantity of men’s clothing from the master bedroom including shoes, hats, and jeans, a tally sheet similar to the one found in the vehicle driven by defendant, a picture of the defendant in the living room, 49 grams of crack cocaine in Maria Lewis’ bedroom, 255 grams of cocaine split between nine clear plastic bags found in the washing machine in the garage, two and a half grams of crack cocaine on a kitchen shelf, and drug paraphernalia, including plastic bags, razor blades, a scale, and a vacuum sealer with vacuum sealer bags, found in the kitchen.[5]
Next, Detective Eric Dufrene, of the Jefferson Parish Sheriffs Office Narcotics Division, testified that he was a member of Lieutenant Jewell’s investigative team on August 4, 2009, and aided in the investigation of the defendant. Detective Dufrene testified that, after the defendant was arrested and advised of his Miranda rights by Lieutenant Jewell, he was tasked with maintaining the care, custody, and control of the defendant. While in his custody, the defendant advised Detective Dufrene that he did not live at 3232 Kentucky Avenue, but that he lived with his mother at 1110 Demarco Street. After transporting the defendant to the Jefferson Parish Correctional Center, Detective Dufrene went to 3232 Kentucky Avenue where he acted as evidence custodian 17with respect to the items seized.
Kelly Carrigan, latent fingerprint technician with the Jefferson Parish Sheriffs Office, was qualified by the trial court as an expert in latent fingerprint analysis. Carrigan testified that he processed one Glock Model 23 handgun, one .40 caliber semi-automatic pistol, .740 caliber S & W Winchester cartridges, one Springfield Armory Model XD45 .40 caliber semi-automatic pistol, and 1945 auto-caliber cartridges. However, no usable latent prints were developed. Carrigan was also asked to process the plastic bags containing the narcotics as well as the digital scale containing a white powder residue. Carrigan testified that the plastic bags containing the narcotics tested negative for fingerprints, and the digital scale contained only a partial fingerprint which was sent to the Latent Fingerprint Identification Section for identification.
Gene Dixon, with the Jefferson Parish Sheriffs Office Narcotics Division, testified that on August 4, 2009, he assisted Lieutenant Jewell in the investigation of the defendant. Dixon was tasked with presenting certain forfeiture paperwork to the defendant at the time of his arrest. When *891 presented with a disclaimer form regarding the evidence seized, the defendant indicated that the $10,000 seized from the home on Kentucky Avenue did not belong to him but rather indicated, “it was for his brother.”
On cross-examination, Dixon stated that the defendant informed him that he did not live at 3232 Kentucky Avenue, and that he did not know about the narcotics found at that residence. However, Dixon further testified that the defendant was aware of the $10,000 located in the home, and the defendant stated that the money belonged to Corey Robinson, his brother, who was planning on using the money to buy a car.
Charles Krone, a forensic scientist with the Jefferson Parish Sheriffs Office, Rand recognized by the court as an expert in the field of controlled dangerous substance analysis, tested the narcotics recovered in this case. First, Krone tested the off-white powder found within one of the nine smaller plastic bags found in the washing machine -within a larger plastic shopping bag. The substance tested positive for cocaine and Krone determined the total net weight of the substance to be 246.38 grams. Next, Krone tested a sandwich bag containing seven smaller bags with “large pieces of material” inside. The material tested positive for cocaine with a total net weight of 45.51 grams. Finally, Krone tested the substance found in another small bag which tested positive for cocaine and had a gross weight of 2.2 grams.
Lastly, the State called Joel O’Lear, who testified that he is a firearm and tool mark examiner as well as a latent fingerprint examiner with the Jefferson Parish Sheriffs Office Forensic Identification Section. After O’Lear was qualified as an expert in latent fingerprint examination, he testified that he analyzed a fingerprint removed from the digital scale seized from the home, but due to insufficient clarity was unable to draw any conclusions. Next, O’Lear testified that on the morning of trial, he obtained fingerprints from the defendant and compared them to the fingerprints on the back of the bill of information on one of defendant’s previous convictions for possession with intent to distribute cocaine, Case No. 97-007, finding that the defendant’s fingerprints matched those from his prior conviction. O’Lear then compared the fingerprints taken the morning of trial to a second certified conviction where defendant was charged with simple possession of cocaine, Case No. 426-892, again finding that defendant’s fingerprints matched those from defendant’s prior conviction.
After the State rested, the defense introduced into evidence: two of the defendant’s arrest registers dated August 4, 2009, bearing the address 1110 |gDemarco Drive, Marrero, Louisiana; one hand-written arrest register authored by Jewell bearing the address 3232 Kentucky Avenue; and one typed arrest register dated August 4, 2009, bearing the address 3232 Kentucky Avenue, Kenner, Louisiana.
The defense then called Diana Robinson (“D. Robinson”), the defendant’s mother, to the stand. D. Robinson testified that the defendant has been married to Sharon Robinson (“S. Robinson”) for 24 years, and he has a sister-in-law by the name of Maria Lewis. D. Robinson further testified that on August 4, 2009, police officers arrived at her house on 1110 Demarco Drive in Marrero inquiring into whether Sharon Robinson lived there. After advising the officers that the defendant and Sharon Robinson did not live with her, she told them that the defendant “lived somewhere in Kenner.” However, at trial, D. Robinson testified that at the time of defendant’s arrest, the defendant was residing with Terry Hunter in Gretna since the defendant and his wife had separated. On *892 cross-examination, D. Robinson testified that the reason she told the officers that the defendant lived in Kenner was because he was “back and forth” between Terry Hunter and his wife.
Lastly, Terry Hunter testified on behalf of the defense. Hunter testified that the defendant is her boyfriend of five years, and they have a son together. Hunter further testified that the night before the defendant’s arrest, August 3, 2009, the defendant spent the night with her at her home at 500 Wall Boulevard, Apartment 96, in Gretna. According to Hunter, for the last five years, the defendant has spent 90 percent of the time living with her.
On cross-examination, Hunter testified that the defendant does not live with his mother at the Demarco address. However, since the defendant resides with her 90 percent of the time, Hunter testified “[w]hen he’s not with me, I don’t know 110what he’s doing.”
ASSIGNMENT OF ERROR NUMBER FIVE[6]
THE VERDICT IS CONTRARY TO THE LAW AND THE EVIDENCE.

DISCUSSION

The defendant was charged, tried, and convicted of possession of cocaine in excess of 200 grams, but less than 400 grams, and of possession of a firearm by a convicted felon. The defendant now argues that the evidence presented by the State failed to establish he had dominion and control over the weapons and cocaine found at his wife’s residence. Specifically, the defendant asserts that since he did not reside at the residence where the contraband was seized, the State failed to establish that he had a connection and/or constructive possession over the cocaine or weapons recovered.
The State responds that the evidence presented at trial was sufficient to establish that the defendant maintained constructive possession of the contraband seized at 3232 Kentucky Avenue. Specifically, the State asserts that the evidence established that defendant maintained a residence with his wife at 3232 Kentucky Avenue based upon the testimony of the witnesses presented at trial, in addition to the physical evidence found at the home which proved the requisite dominion and control over the contraband.
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime | r beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
An appellate court, in reviewing the sufficiency of evidence, must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the *893 light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Sosa, 05-213 (La.1/19/06), 921 So.2d 94, 99. Additionally, when circumstantial evidence forms the basis of the conviction, “the evidence, assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. Id. “When a jury rationally rejects the hypothesis of innocence advanced by the defendant, that hypothesis fails, and ‘the defendant is guilty unless there is another hypothesis which raises a reasonable doubt,’ i.e., an ‘alternative hypothesis ... sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.’ ” Id., (citing State v. Captville, 448 So.2d 676, 680 (La.1984)). The trier-of-fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness, at its discretion. Sosa, 05-213, 921 So.2d at 101. The appellate court may impinge on the fact-finder’s discretion only to the extent necessary to guarantee the fundamental due process of law. Id.
The jury may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052,1056. Absent internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Caffery, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. The credibility of | ^witnesses is not to be reweighed on appeal. Rowan, 97-21, 694 So.2d at 1056.
In the instant case, defendant first challenges the evidence relating to his conviction for possession of cocaine in excess of 200 grams, but less than 400 grams, in violation of LSA-R.S. 40:967(F). In order to support a conviction for possession of cocaine pursuant to LSA-R.S. 40:967, the State must prove beyond a reasonable doubt that the defendant was in possession of the cocaine and that he knowingly possessed it. State v. Walker, 03-188 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, 65, writ denied, 03-2343 (La.2/6/04), 865 So.2d 738. The element of possession may be proven by showing that the defendant exercised either actual or constructive possession of the cocaine. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 241.
A person who is not in physical possession of narcotics may have constructive possession when the drugs are under his dominion and control. State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761, writ denied, 01-2269 (La.9/20/02), 825 So.2d 1156. A determination of whether there is “possession” sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Toups, 01-1875 (La.10/15/02), 833 So.2d 910, 912.
Next, the defendant challenges the evidence relating to his felon in possession of a firearm conviction. In order to convict a person of violating LSA-R.S. 14:95.1, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enu *894 merated felony; 8) the defendant | ^possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense. State v. Watson, 08-214, p. 7 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 784.
Similar to the law regarding possession of cocaine, likewise, actual possession of a firearm is not necessary to prove the possession element of LSA-R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession. State v. Day, 410 So.2d 741, 748 (La.1982). A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. State v. Johnson, 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. A person’s dominion over a weapon constitutes constructive possession, even if it is only temporary in nature and even if control is shared. Id., 03-1228 at 5, 870 So.2d at 999.
A defendant’s mere presence in an area where a firearm was found does not necessarily establish possession. Johnson, 03-1228 at 5, 870 So.2d at 999. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Id., 03-1228 at 5, 870 So.2d at 998.
Moreover, it is well established that being a resident of the premises where contraband is found is not in and of itself sufficient to prove constructive possession. State v. Kelly, 01-321, p. 4 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 982, writ denied, 01-3266 (La.11/1/02), 828 So.2d 565. And while it can be inferred that a defendant lives at a residence where contraband is discovered because his spouse lives there, there must be direct evidence (such as utility bills or other correspondence mailed to the defendant at that address), to support a finding of constructive possession. See State v. Martin, 98-1507 (La.App. 4 Cir. 4/5/00), |144788 So.2d 1. Additionally, a subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. Id.
Thus, in the present ease, the crux of the controverted issue is whether defendant possessed the contraband, the cocaine and weapons and had the requisite intent to possess the contraband, i.e., guilty knowledge.
The defendant cites to State v. Holland, 2008-1116 (La.App. 4 Cir. 5/20/09), 13 So.3d 777, State v. Bell, 566 So.2d 959 (La.1990), and State v. Jackson, 557 So.2d 1034 (La.App. 4 Cir.1990), in support of his proposition that the requisite dominion and/or control was not established at trial since the defendant did not reside at 3232 Kentucky Avenue, the home in question. However, Holland, supra, Bell, supra, and Jackson, supra, are clearly distinguishable from the present matter.
In Holland, supra, the defendant was a passenger in a vehicle driven by James C. Moore. Moore’s vehicle was stopped pursuant to a routine traffic stop. After stopping the vehicle and questioning Moore and the defendant, the officer became suspicious due to their conflicting stories. Holland, 08-1116 at 2, 13 So.3d at 779. The officer obtained consent from Moore to search the vehicle and found one rock of cocaine underneath the passenger seat where the defendant was seated, and two underneath the driver’s seat. The search also revealed two glass pipes used for smoking crack cocaine. Id., 2008-1116 at 3, 13 So.3d at 779. Both Moore and the defendant denied ownership of the narcotics. At trial, the defendant testified that *895 he did not know the crack cocaine was under his seat and did not know that the center console contained crack pipes. Id. at 2008-1116, p. 4, 13 So.3d at 780. The defendant further testified that other people had used Moore’s truck. The defendant was convicted of possession of cocaine and appealed arguing | lsthat the evidence presented at trial was insufficient to support his conviction. Specifically, the defendant contended that constructive possession was not established. The court of appeal reversed the judgment of the trial court finding that a rational trier of fact could not have concluded that the defendant exercised dominion and control over the cocaine, or that he willfully and knowingly shared the right to control it with the driver. Specifically, the appellate court noted that the State failed to adduce evidence to suggest that either of the two crack pipes were warm, that the defendant was under the influence of crack cocaine, or that his fingerprints were on either of the two pipes. Thus, the court of appeal concluded that the evidence was equivocal as to whether the defendant knew that the crack cocaine was in the vehicle. Id., 08-1116 at 9, 13 So.3d at 782-83.
In support of its reversal, the Louisiana Fourth Circuit Court of Appeal cited to State v. Bell, supra, and Jackson, supra.
In Bell, supra, police approached a stopped vehicle and requested that the occupants turn down them music. One officer noticed a package, later determined to be cocaine, among some cassette tapes in a plastic console between the front passenger and driver seats. Both the driver and passenger of the ear were arrested and convicted of attempted possession of cocaine. The Louisiana Supreme Court reversed the passenger’s conviction finding that the passenger’s mere presence in the car close to the sealed package could not establish that the passenger exercised dominion and control over the package, or that he willfully and knowingly shared the right to control it with the driver. Bell, 566 So.2d at 960.
In Jackson, supra, the defendant threw down drugs at the sight of the police and ran into an apartment. The police followed and found the defendant standing at a homemade bar containing a glass pipe with cocaine residue, a mirror with trace amounts of cocaine, a razor blade with traces of cocaine, test tubes, glasses, and a Imbag containing material to dilute cocaine. The court of appeal found that the evidence was insufficient to establish that the defendant exercised dominion and control over the objects which contained cocaine residue. Specifically, the appellate court reasoned that because there was no indication that the pipe was warm, that the defendant’s fingerprints were on any of the contraband, or that the defendant was anything more than a guest in the apartment where the contraband was found, the evidence was insufficient to support the conviction.
The common thread in all three cases, Holland, supra, Bell, supra, and Jackson, supra, is that the defendants were guests in the locations where the contraband was retrieved. Moreover, the contraband was found in areas belonging to someone else, not the defendant. Additionally, the facts and evidence presented in these cases did not establish the defendants’ dominion or control over the subject contraband other than to suggest that the defendants’ mere presence in the subject locations where the drugs were seized were enough to convict. Whereas, in the present case, the evidence presented by the State established that the defendant was more than a guest and did, in fact, maintain a residence at 3232 Kentucky Avenue, with his wife of 24 years, based on evidence seized from the home, including: *896 the presence of his clothing, documentation containing his name with the Kentucky address on it, the fact that he was driving a vehicle rented by his wife, possession of a key that opened the front door to the home, possession of large quantities of money and a tally sheet (which were also present in the home), coupled by the fact that the defendant’s mother testified that he did not reside with her, but rather was back and forth between his girlfriend’s house and his wife’s house on Kentucky Avenue in Kenner.
Here, unlike Holland, supra, Bell, supra, and Jackson, supra, we find that the evidence supports a finding that defendant had dominion and control over the | i7cocaine and firearms sufficient to constitute constructive possession based on the evidence established at trial and the jurisprudential authority discussed infra.
In State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, writ denied, 03-0909 (La.9/26/03), 854 So.2d 345, a case factually analogous to the present matter, the defendant was convicted of possession of cocaine with intent to distribute. Based on information received by the narcotics division, officers initiated surveillance on the defendant. During the surveillance, the defendant was observed in a green Ford Explorer participating in what officers believed to be a hand-to-hand drug transaction. The defendant was detained and a bag of cocaine was retrieved from his person, along with $18.00 in cash and a set of keys. During the month prior to defendant’s arrest, police conducted a surveillance on what they believed to be the defendant’s apartment at 3401 Edenborn Drive in Metairie. During the extended surveillance, on three occasions, the officers observed the defendant leaving the apartment complex in the Ford Explorer. Thus, after arresting the defendant, the officers obtained a search warrant for the Edenborn apartment. The officers used the keys found on defendant at the time of his arrest to open the door to the apartment. Upon executing the search warrant, the officers discovered 38 individually wrapped rocks of crack cocaine along with $830.00 in cash. The defendant appealed his conviction asserting that the State failed to prove that he possessed the cocaine found at the Edenborn apartment.
This Court affirmed defendant’s conviction based on the fact that defendant was seen on three occasions leaving the apartment complex in the Ford Explorer regularly used by the defendant and which was registered to his wife. Further, this Court noted that the officers found mail addressed to the defendant and his wife at the Edenborn address indicating a connection between defendant and the apartment. Moreover, this Court determined that the defendant was in possession |1sof the key to the apartment when he was arrested. Finally, this Court found that although the lease was in the defendant’s wife’s name, she and the defendant were married, he frequently used her truck, and mail was found addressed to the defendant at the apartment. Thus, this Court reasoned that it could be surmised that the defendant and his wife shared the residence at Edenborn.
This Court also found that the evidence put forth by the defense which established that some of the mail seized at the apartment was addressed to the defendant at a South Clark Street address and a D’he-mecourt Street address, was insufficient to overturn defendant’s conviction. Specifically, Brenda Price testified that on the date of defendant’s arrest, the defendant was living with her at the South Clark Street address. Ms. Price further testified that her sister lived at the D’hemecourt address. Based on this testimony, this Court reasoned that while it is possible *897 that defendant stayed from time to time at the South Clark and D’hemecourt addresses, the evidence tended to show that the Edenborn apartment was the defendant’s “stash house.” Marshall, 02-1067, 841 So.2d at 899. Thus, this Court held that the evidence was sufficient to support the elements of possession.[7]
In this case, the defendant’s primary contention is that the State failed to establish a connection to the defendant and the contraband seized given the fact that it was not established that the defendant resided at 8232 Kentucky Avenue. We, however, find that the defendant’s contention is misplaced, and that the evidence supports a finding that the defendant had dominion and control over the [^cocaine and weapons seized in the house sufficient to constitute constructive possession.
Similar to the evidence presented in Marshall, supra, in this case, at trial, Lieutenant Jewell testified that pursuant to the defendant’s arrest, the defendant and his vehicle were searched, at which time $2,205.00 in cash and a cell phone were recovered from defendant’s person, and a rental agreement (in the name of his wife, Sharon Robinson), a second cell phone, a set of keys, and a tally sheet were recovered from inside the vehicle. Moreover, when the defendant was asked where he lived, he responded that he lived at 1110 Demarco Street with his mother and wife, Sharon Robinson. However, upon questioning his mother at her home on Demarco Street, she denied that defendant lived with her and told officers that he in fact lived with his wife in “Metairie somewhere.” Based on this information, Lieutenant Jewell obtained a search warrant for defendant’s home at 3282 Kentucky Avenue where he was known to reside with his wife. Lieutenant Jewell further testified that one of the keys on the key ring seized from defendant opened the front door of the home on Kentucky Avenue. Additionally, upon searching his home on Kentucky Avenue, Lieutenant Jewell testified that two pistols were retrieved from the top of an armoire located in the master bedroom along with $10,000.00 in cash, and a tally sheet matching the one found in the vehicle, in addition to a picture of the defendant in the living room, and paperwork, including a Cox Cable bill, Medicaid, and Social Security Administration documentation, bearing the defendant’s name and the Kentucky Avenue address. Lieutenant Jewell also testified that in the master bedroom where the guns were retrieved, a large amount of men’s clothing, shoes, and hats were also found. The officers also recovered contraband in the common areas of the house, including, 255 grams of cocaine split between nine clear plastic bags found in the washing machine in the 12pgarage, two and a half grams of crack cocaine on a kitchen shelf, and drug paraphernalia, including plastic bags, razor blades, a scale and a vacuum sealer with vacuum sealer bags in the kitchen.
*898 Taken as a whole, the evidence put on by the State at trial was sufficient to establish a connection to the defendant and the subject house on Kentucky Avenue.[8] Moreover, the facts as testified to by Lieutenant Jewell, including the evidence seized at the Kentucky residence that directly links the defendant to the home, strongly support the conclusion that defendant had constructive possession over the contraband and that his wife shared with him knowledge of, and access to, the contraband found in the home.[9]
And although the defense presented the testimony of the defendant’s girlfriend, Terry Hunter, who testified that the defendant lives with her 90 percent of the time, she admitted that she is unaware of what he does when he is not with her.
Finally, the defendant’s mother testified that the defendant does not live with her but is “back and forth” between Terry Hunter’s residence on the Westbank and his wife’s home on Kentucky Avenue in Kenner.[10]
As in Marshall, supra, while it is possible that the defendant may have stayed at his girlfriend’s residence sometime, the evidence established that the Kentucky Avenue home was also where he occasionally stayed based on the direct evidence introduced at trial linking him to the subject residence.
| ⅞1 Given the evidence and testimony presented at trial, we find that the evidence is sufficient to support the element of possession. -Moreover, we find that the jury could have rationally concluded that the defendant maintained a residence at 3232 Kentucky Avenue with his wife despite the testimony of the defense witnesses, which the jury found to be less credible than that of the State’s witnesses.
Thus, based on a review of the record, we find that the State sufficiently proved beyond a reasonable doubt that the defendant was guilty of possession of cocaine in excess of 200 grams, but less than 400 grams, and possession of a firearm by a convicted felon.

ASSIGNMENT OF ERROR NUMBER ONE

THE HONORABLE DISTRICT COURT RESPECTFULLY ERRED IN THE DENIAL OF THE MOTION TO SUPPRESS STATEMENT.

ASSIGNMENT OF ERROR NUMBER TWO

THE HONORABLE DISTRICT COURT RESPECTFULLY ERRED IN THE DENIAL OF THE MOTION TO SUPPRESS EVIDENCE.

DISCUSSION

In this two-part assignment of error, defendant argues that the State failed to present clear and convincing evidence that he was read his Miranda rights and that he knowingly, intelligently, freely and voluntarily waived his rights prior to providing his statement. Specifically, defendant contends that Lieutenant Jewell testified at the suppression hearing that he was unsure as to whether he actually read the *899 defendant his Miranda warnings. Additionally, defendant asserts that Lieutenant Jewell failed to provide a recitation of the exact Miranda warnings given to the defendant, while testifying at the suppression hearing. Thus, defendant argues that the State failed to meet the minimum legal prerequisites for ^admission of an alleged inculpatory statement. Moreover, defendant submits that because the statement at issue formed the basis of the “Application for Search,” the trial court erred in denying defendant’s motion to suppress evidence. Lastly, defendant contends that it was reversible error to reopen the suppression hearing.
In response, the State asserts that defendant did not give an inculpatory statement to police. Specifically, the State argues that the only statement given to police at the time of defendant’s arrest was his address. According to the State, at the time of defendant’s arrest, he informed officers that he did not reside at 3232 Kentucky Avenue, but rather resided at 1110 Demarco Street. Thus, the State submits that the law cited by defendant pertaining to admission of a confession is inapplicable. Regardless, the State contends that the testimonies of Lieutenant Jewell and Detective Dufrene established that defendant was advised of his Miranda rights prior to giving the alleged statement.
March 4, 2010 Suppression Hearing
On August 24, 2009, defendant filed a motion to suppress the evidence, confession and identification.[11] Defendant’s motions were heard on March 4, 2010. Prior to calling its first witness, the State clarified for the court that since no inculpatory statements were made by the defendant, it would only be proceeding with the hearing on defendant’s motion to suppress evidence. Defense counsel disagreed with the State’s characterization of the facts, explaining that the defendant’s statement to the officers that he lived at 1110 Demarco Street and not 3232 Kentucky Avenue was used in the probable cause affidavit and could possibly be construed as inculpatory.
| j^Thus, the hearing proceeded on both motions, with the State calling Lieutenant Jewell to the stand. At the suppression hearing, Lieutenant Jewell testified that, prior to defendant’s arrest, he had been conducting an ongoing narcotics investigation of the defendant. Lieutenant Jewell further testified that on August 4, 2009, he stopped the defendant at a gas station for several outstanding attachments. After placing defendant under arrest and obtaining his verbal consent, the defendant’s vehicle was searched.[12] Lieutenant Jewell testified that at the time the defendant was placed under arrest, either he or Sergeant Shane Kline advised the defendant of his Miranda rights. However, after refreshing his memory with a copy of the police report, Lieutenant Jewell clarified that he, and not Kline, advised the defendant of his constitutional rights. Finally, Lieutenant Jewell testified that subse *900 quent to the defendant’s arrest, he obtained and executed a search warrant at 3232 Kentucky Avenue based on the information gained pursuant to defendant’s arrest.
The trial court denied defendant’s motion to suppress. First, the trial court found the consent to search defendant’s car was validly obtained. The trial court also determined that the search warrant prepared subsequent to defendant’s arrest, which listed defendant’s address as 3232 Kentucky Avenue, to be valid. Finally, the court noted that, while Lieutenant Jewell did not testify regarding the litany of constitutional rights given to defendant at the time of his arrest, it was of no moment since there was no inculpatory statement to suppress. Specifically, the court noted that a response to police questioning as to where someone lives is not inculpatory. Thus, the trial court ruled that the State could use defendant’s statement regarding his address at trial.
li>40n the morning of trial, the State again informed the court and defense counsel that it intended on using the defendant’s statement that he lived at 1110 Demarco Street, at trial. The State also noted that, although the trial court did not suppress the statement, it was willing to call Lieutenant Jewell to the stand again, outside the presence of the jury, so that the colloquy of constitutional rights read to defendant at the time of his arrest could be elicited on the record. Defendant objected to the re-opening of the hearing to which the State clarified that it was not seeking to re-open the suppression hearing, since the court ruled in its favor, but rather was seeking to “understand” the court’s prior ruling regarding the defendant’s statement. The trial court decided that it wished to hear from Lieutenant Jewell to “clarify exactly what was done” and to “ascertain that the defendant got and understood his rights.” Specifically, the court reasoned:
Again, and just so the record’s clear, I think it’s — as the state said, again, it was succinct. The purpose of the hearing is not to punish the state for not— the purpose to determine whether the defendant’s constitutional rights were violated. If they were violated then, I’m going to suppress it. If they weren’t, then, there’s no issue.
Thus, prior to trial, Lieutenant Jewell testified for a second time that the defendant was read his Miranda rights when he was placed under arrest and before any statements were made. Lieutenant Jewell specifically testified to the litany of Miranda rights given, and that the defendant understood his rights, did not ask for an attorney, was not threatened or coerced into making a statement, and did not promise him anything in exchange for his statement. After hearing the testimony, the court found as follows: “I think it’s clear that the defendant was read his rights, read the proper rights, and understood his rights. So, the motion to suppress is denied.”
12sThe statement at issue is that the defendant told the officers at the time of his arrest that he lived at 1110 Demarco Street with his mother.[13] Thus, the inquiry in the present matter is two-fold: 1) whether the defendant’s statement regarding his address is inculpatory in nature such that the State’s failure to meet the requirements of admission pursuant to LSA-R.S. 15:451 renders defendant’s *901 statement inadmissible at trial; and 2) if defendant’s statement does not fit within the purview of LSA-R.S. 15:451 regarding admissibility, whether the State made the minimum requisite showing that defendant was advised of his constitutional rights and waived same before making his statement.
All statements which are damaging in nature are not inculpatory. State v. Bodley, 394 So.2d 584 (La.1981). “As contemplated by article 768, an ‘inculpato-ry statement’ refers to an out of court admission of incriminating facts made by the defendant after the crime has been committed. An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt may be inferred.” State v. Seymour, 449 So.2d 1189, 1192 (La.App. 2 Cir.1984), writ denied, 452 So.2d 173 (La.1984); State v. Neslo, 433 So.2d 73, 82-83 (La.1983); State v. Quimby, 419 So.2d 951, 956 (La.1982); State v. Brumfield, 329 So.2d 181, 187 (La.1976).
In State v. Andrus, 250 La. 765, 199 So.2d 867 (La.1967), the Louisiana Supreme Court noted that incriminating statements made by the accused are placed in three categories. The first is the confession which admits to the guilt of the crime charged. The second is the admission which involves the existence of criminal intent. The third is the admission or acknowledgment of facts which tend to establish guilt but which do not involve the existence of criminal intent. Id., 199 |26So.2d at 880. The court concluded that remarks which are not express admissions of guilt, or facts showing criminal intent, can be introduced without the foundation necessary for admitting a confession, despite the fact that the statement might be considered inculpatory. Id., 199 So.2d at 881.
Here, the alleged inculpatory statement is defendant’s remark to police officers that that he lived at 1110 Demarco Street with his mother. After speaking with the defendant’s mother at the Demar-co Street address provided by defendant, it was established that the defendant did not live at that address. Based on information obtained from the defendant’s mother along with other evidence to suggest that defendant had lied about his address, officers executed a search warrant at 3232 Kentucky Avenue, the address believed to be where defendant and his wife resided. It was at the Kentucky Avenue residence where officers seized the cocaine and weapons upon which defendant was charged. Thus, applying the definitions of inculpatory to the statement made by defendant in light of the attendant facts and circumstances, defendant’s statement regarding his address, which was not the address where the contraband was found, is not inculpatory in nature. In fact, defendant’s statement regarding his address may be considered exculpatory in nature and used by the State to demonstrate inaccuracies in the statement and to prove guilt by implication.
In sum, because the address provided by defendant is not an express admission of guilt or a fact tending to show criminal intent, the State was entitled to use defendant’s statement at trial without first establishing the necessary foundation for admission of a confession. Therefore, appellant erroneously cites to jurisprudence regarding the admission of confessions in support of his argument when the State is only required to show that defendant had been advised of his constitutional rights and waived them before making his statement.
l27In State v. Malveaux, 499 So.2d 301 (La.App. 1 Cir.1986), writ denied, 505 So.2d 1138 (La.1987), as in the instant case, the State used exculpatory statements made by the defendant in conjunc *902 tion with contradictory evidence in order to prove defendant’s guilt. The defendant argued that the statements were inadmissible because they were “admissions” offered for the inference of guilt, thus, the defendant asserted that prior to their use, the State would have to set forth the formal requirements. In affirming the trial court’s ruling allowing the statements into evidence, the appellate court relied on Andrus, supra, noting:
[R]emarks which are not express admissions of guilt or facts showing criminal intent can be introduced without the foundation necessary for admitting a confession, despite the fact that the statement might be considered inculpa-tory. Andrus, 250 La. at 765, 199 So.2d at 881.
Of course, truly exculpatory statements are never used by the prosecution. Statements which the defendant intended to be exculpatory are instead used to impeach his testimony at trial or to demonstrate inaccuracies in the statement he gave under interrogation and thus to prove guilt by implication. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the Court demanded that the advice-of-rights warning be given regardless of whether the statements are considered inculpatory or exculpatory.
Based on Andrus, the appellate court determined that the defendant’s statements were exculpatory and did not purport to be confessions under LSA-R.S. 15:451 because they did not involve the existence of criminal intent. Therefore, the court held that the State was only required to show that defendant had been “advised of his constitutional rights and waived the same before making his statements.” Malveaux, 499 So.2d at 304-05.
In the instant case, just as in Malveaux, defendant’s statement regarding his address does not purport to be a confession pursuant to LSA-R.S. 15:451. Thus, the State was only required to show that defendant was advised of his Miranda | ^rights and waived them prior to making his statement. Based on the testimony elicited at the suppression hearing and at trial, we find that the State met its burden.
At the March 4, 2011 suppression hearing, Lieutenant Jewell testified, after refreshing his memory with his police report, that after he placed defendant under arrest for outstanding warrants, he advised the defendant of his Miranda rights. Additionally, on March 11, 2011, outside the presence of the jury, the trial court exercised its discretion and permitted Lieutenant Jewell to testify for a second time regarding the constitutional rights read to defendant prior to the alleged statement being made.[14] This time, Lieutenant Jewell specifically testified that he read defendant his Miranda rights from a card he carries with him. Lieutenant Jewell then enunciated the exact rights that were read to defendant. Lieutenant Jewell further testified that defendant understood his rights, did not ask for an *903 attorney, was not threatened or coerced into making a statement, and that he did not promise the defendant anything in exchange for his statement.
Lieutenant Jewell also testified for a third time at trial. At trial, Lieutenant Jewell testified consistently with his prior testimony and informed the jury of the specific Miranda rights defendant was advised of prior to providing his address to him after his arrest.[15] Lieutenant Jewell also confirmed that the defendant understood his rights, was not coerced, threatened, or promised anything in exchange for a statement. After advising him of his rights, Lieutenant Jewell | ¡^testified that defendant provided him with verbal consent to search his vehicle, and when asked where he lived, the defendant indicated to the officers that he lived at 1110 Demarco Street with his mother.[16]
In determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing, but may also consider the evidence presented at trial. State v. Huntley, 08-125, p. 6 (La.App. 5 Cir. 5/27/08), 986 So.2d 792, 796 (citing State v. Brumfield, 96-2667, p. 43 (La.10/20/98), 737 So.2d 660, 683, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999)). Moreover, a trial court’s determination on the motion to suppress should not be disturbed on appeal, unless it is clearly wrong. State v. Addison, 08-461, p. 12 (La.App. 5 Cir. 2/10/09), 8 So.3d 707, 716.
In the present matter, there is no suggestion in the record that defendant was not adequately advised of his rights at the time of his arrest. He was made fully aware that any statement he made to the officers might be used against him, and there is no evidence challenging the officer’s testimony that the defendant understood his rights. Finding Lieutenant Jewell’s testimony to be credible, the trial court did not abuse its discretion by denying defendant’s motion to suppress the statement. Thus, we find that the trial court did not err in denying defendant’s motion to suppress statement, or in the denial of defendant’s motion to suppress evidence.[17]
*904 IsflEven assuming arguendo that the trial court erred in denying defendant’s motion to suppress statement, the erroneous admission of a statement or confession is subject to a harmless error analysis. State v. Harris, 2001-2730, p. 26 (La.1/19/05), 892 So.2d 1238, 1260, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005). An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. Robertson, 2006-1537, p. 9 (La.1/16/08), 988 So.2d 166, 172; State v. Barbour, 2009-1258, p. 14 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1150, writ denied, 2010-0934 (La.11/19/10), 49 So.3d 396, cert. denied, Barbour v. Louisiana, — U.S. -, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011).
Considering all of the evidence, we find that beyond a reasonable doubt, the guilty verdict rendered in the instant case was not attributable to any possible error by the trial court in denying the defendant’s motion to suppress the statement.[18]

ASSIGNMENT OF ERROR NUMBER THREE

THE DISTRICT COURT RESPECTFULLY ERRED IN ALLOWING THE STATE TO AMEND THE BILL OF INFORMATION (ADDING A PRIOR CONVICTION) IMMEDIATELY BEFORE TRIAL.

ASSIGNMENT OF ERROR NUMBER FOUR

THE DISTRICT COURT RESPECTFULLY ERRED IN THE DENIAL OF THE MOTION FOR CONTINUANCE REQUESTED IN THIS MATTER.

DISCUSSION

In this two-part assignment of error, defendant argues that the trial court erred in permitting the State to amend the bill of information on the day of trial to include a second predicate offense to count three, LSA-R.S. 14:95.1. Defendant contends that the element needed to establish defendant’s prior felony conviction |S1 under LSA-R.S. 14:95.1, had already been established in the original bill of information, thus, the amendment which included the addition of a second predicate offense, was not relevant under LSA-C.E. art. 403. Defendant further argues that the trial court erred in denying his motion for continuance based on the State’s amendment which prejudiced the defendant at trial.
In response, the State contends that the trial court properly permitted defendant’s two previous felony convictions into evidence. Additionally, the State argues that the amendment to the bill of information, adding a second predicate felony offense, did not provide an element of surprise to defendant, nor did it prejudice the defendant as the defendant had knowledge of its possible use under State v. Prieur.[19]
First, it is well established that evidence of both of defendant’s previous felony convictions are admissible at trial as proof of an element of the crime charged; proof of either conviction being sufficient to support defendant’s conviction under LSA-R.S. 14:95.1. State v. Sanders, 357 So.2d 492, 493-94 (La.1978), cited by the State in its appellate brief, found the trial judge properly permitted the introduction into evidence of both of defendant’s prior felony convictions. In Sanders, the defendant was convicted of being a felon in possession of a firearm. On appeal, he *905 contended the trial judge erred in permitting the State to introduce evidence of more than one of defendant’s prior convictions for certain felonies in LSA-R.S. 14:95.1. The Louisiana Supreme Court noted that an essential element of the crime was defendant’s prior conviction for one of the enumerated felonies. Thus, the Court concluded that “evidence of both of defendant’s previous felony convictions was admissible at trial as proof of an element of the crime charged and the manner in which the present offense was | ^committed, proof of either prior conviction being sufficient to support defendant’s conviction for the present offense.” Id., 357 So.2d at 494; See also, State v. Washington, 00-1542 (La.App. 5 Cir. 2/14/01), 782 So.2d 689, writ denied, 01-0940 (La.2/8/02), 807 So.2d 859. In Washington, the defendant was charged with being a felon in possession of a firearm based on two predicate felony convictions. He filed a motion in limine seeking to limit the State’s proof to one felony conviction, which was denied by the trial court. On appeal, the defendant argued that proof of more than one felony conviction was unduly prejudicial. This Court, citing Sanders, held that the trial court’s denial of the motion in limine was proper. Washington, 00-1542 at 10-11, 782 So.2d at 644-45; and in State v. Marrero, 363 So.2d 494 (La.1978), the defendant appealed his conviction, arguing that the trial judge erred in permitting the State to allege in the bill of information more than one of defendant’s prior convictions for a felony enumerated in LSA-R.S. 14:95.1. The Louisiana Supreme Court, citing Sanders, found that a prior conviction was an essential element of -the crime and allowing the State to allege more than one previous conviction in the bill of information was not reversible error. Id., 363 So.2d at 499.
Thus, based on the jurisprudence, we find that permitting the State to amend the bill of information to allege more than one previous conviction is not reversible error. However, the inquiry now becomes whether it was error for the trial court to deny defendant’s motion for continuance based on the amendment to the bill of information on the morning of trial, which the defendant claims prejudiced his defense.
On October 26, 2009, many months in advance of trial, the State filed a notice of intent to use evidence of other crimes. Specifically, the State’s Prieur, supra, notice, informed defendant that the State intended on using defendant’s prior Issconvictions, including the second predicate conviction added to the bill of information on the morning of trial, to establish defendant’s intent, motive, and guilty knowledge.[20] Approximately one week before trial, on March 4, 2010, the State’s *906 Prieur notice of intent was set for hearing. Defense counsel argued at the hearing that permitting evidence of defendant’s other crimes would be more prejudicial than probative. The trial court disagreed, ruling that evidence of defendant’s previous convictions would be permitted to be used at trial. On the morning of trial, March 10, 2010, the State withdrew its prior Prieur notice and advised the court that it would be adding a second predicate offense to count three of the bill of information which charged defendant with a violation of LSA-R.S. 14:95.1. The following colloquy-ensued:
MR. NETTERVILLE:
Like I said, I have no objection if he wants to substitute it, but if he’s going to add it as a second one, I object to it and move for a continuance.
THE COURT:
Still — he’s right, there’s no prejudice. It’s not — I mean certainly you knew about it, or your client knows about it, so, it’s not — there’s no prejudice. It’s not really the elements of — doesn’t affect this trial at all other than—
MR. NETTERVILLE:
It is a prejudice because the first one didn’t link up, or perhaps—
MR. SCHLEGEL:
It does link up.
MR. NETTERVILLE:
| ¾4 — perhaps it does link up. There’s [sic] arguable issues as to when you got out and whether or not the ten years comes before this case as to when you got out. So, there are arguable issues. So, there is prejudice because that eliminates that part of the defense.
THE COURT:
I mean, I totally disagree with you. I think the only prejudice is that you’re afraid it’s going to dirty him up a little more because there’s [sic] two rather than one now, which is understandable. But at the same time, I mean, that’s just — the facts are the facts are the facts.
MR. NETTERVILLE:
I mean, he’s substantively changing the — an element of the offense, one of the things he has to prove on the day of trial, and adding a second one, Judge.
THE COURT:
I don’t think there’s any prejudice.
In response to defendant’s argument pertaining to the prejudicial nature of the amendment, the State argued:
MR. SCHLEGEL:
Again, the Orleans charge up to this point was coming in under Prieur. He knew it. He was well aware of that charge. He’d been provided with with [sic] search. There’s absolutely no prejudice. The only reason I’m doing it has been explained, and I have a couple of cases, State v. Bolen [Bolden ], 852 So.2d 1050 [(La.App. 5 Cir.2003)], that go into — let’s see, the defendant was not entitled to motion for continuance after state added a charge to the bill of information four days prior to trial. I mean, there’s absolutely no substantive change whatsoever. The state could introduce any and all felonies of the defendant in trial to show an interruption. But that state’s not going to do that. There state doesn’t intend to do that, because there’s no — the state doesn’t want to do that, to prejudice the defendant in any way. It’s just my burden to prove these elements, and that’s why I’m doing it.
Based on the foregoing, the trial court did not abuse its discretion in denying defendant’s request for a continu- *907 anee.[21]
| ¡ttWhen a bill of information is amended, a defendant may be entitled to a continuance. LSA-C.Cr.P. art. 489 provides as follows:
If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy.
The purpose of a continuance is to prevent prejudicial surprise to the defendant. See State v. Davis, 385 So.2d 193, 197 (La.1980). The defendant has the burden to establish that an amendment to a bill of information has prejudiced his defense so as to necessitate a continuance. See State v. Issac, 527 So.2d 1045, 1049 (La.App. 5 Cir.1988), writ denied, 532 So.2d 175 (La.1988). Further, the trial judge has great discretion in deciding whether to grant a continuance, and his decision will remain unless he arbitrarily or unreasonably abuses that discretion. State v. Hammontree, 363 So.2d 1364, 1367 (La.1978); State v. Harvey, 358 So.2d 1224, 1235 (La.1978).
In support of his contention that his defense was prejudiced by the State’s amendment and the trial court’s denial of his motion for continuance, defendant relies on the Louisiana Supreme Court opinion of State v. Gibson, 322 So.2d 143 (La.1975). In Gibson, the defendant was charged with distribution of heroin as a result of an undercover operation wherein Officer Charles Spillers arranged, through an informer, for the purchase of heroin from the defendant. Id. Originally, the bill of information and bill of particulars furnished by the State set forth that the defendant distributed heroin directly to Officer Spillers. Four days before trial, the State amended the bill of information by deleting the provision that | vindicated that the defendant had distributed heroin “to C. Spillers” but did not disclose any information concerning the informer to whom the defendant actually distributed the heroin. Id., 322 So.2d at 144. On the morning of trial, defendant filed a continuance based on the amendment. The defendant argued that it was necessary for the defense to have time to find out the name and whereabouts of the informer to whom the sale was allegedly made in order to properly prepare his defense. The trial court denied defendant’s motion and the Louisiana Supreme Court reversed, finding that pursuant to LSA-C.Cr.P. art. 489, defendant was prejudiced in the prepara *908 tion of his defense. In reaching its decision, the Court reasoned that as a result of the amendment, the defendant was confronted for the first time with a change by the State of the identity and possible testimony of an informant, which might have been helpful and highly relevant to the defense. Moreover, the Court concluded that defendant’s opportunity to cross-examine Officer Spillers would not be a substitute for an opportunity to examine the informer. Id., 322 So.2d at 145.
The defendant in the instant matter argues that this case is similar to Gibson in that he was confronted with additional evidence for which he had to defend against, and thus, a continuance to allow defendant to confront this evidence should have been granted. Gibson, however, is distinguishable from the instant matter. Here, the State did not amend the bill of information to include information that defendant did not have the opportunity to prepare for. Unlike an absent and unidentified witness who may be used by the defendant in support of his defense as in Gibson, we find that the amendment to the bill of information to add a second predicate offense did not surprise or prejudice the defendant who had knowledge of his prior convictions and knowledge, as far back as October 2009 when the State filed its Prieur notice, that the State may use them at trial. ^Additionally, no prejudicial substantive changes were made to the charges that would affect the merits of the defendant’s defense. Moreover, the relevancy of defendant’s prior convictions is well supported by law which requires that the State prove defendant’s convicted felon status, an essential element of the crime under LSA-R.S. 14:95.1. See Sanders, supra. (See also State v. Davis, supra, holding, the State’s amendment to the original indictment charging defendant with first degree murder to add the charge of second degree murder on the morning of trial did not constitute prejudicial surprise. The Court reasoned that proof of a specific intent killing as an element of the offense was required under both the original indictment for first degree murder and the amended indictment for second degree murder. Thus, the defendant would have been required to defend on this issue regardless of the charge.).
Under these circumstances, namely defendant’s prior notice, lack of surprise and prejudice, the requirement that the State prove the elements of defendant’s prior felony status pursuant to LSA-R.S. 14:95.1, and the jurisprudence which permits the bill of information to reflect more than one predicate conviction to support the State’s charge, we find that the trial court did not abuse its discretion in denying defendant’s motion to continue.

ASSIGNMENT OF ERROR NUMBER SIX

THE DISTRICT COURT ERRED IN THE DENIAL OF THE MOTION FOR MISTRIAL AND MOTION FOR NEW TRIAL (DNA EVIDENCE).

DISCUSSION

The defendant argues that the trial court erroneously denied defendant’s motion for mistrial and motion for new trial which was based on the State’s violation of the rules of discovery, which prejudiced his defense of the case and ^lulled him into a misapprehension of the actual strength of the State’s case-in-chief.
In response, the State argues that defendant’s assignment of error should be stricken pursuant to La. Rules of Court, Rule 2-12.4, because defendant did not reference the record, facts, or error of law in his brief that he now seeks this Court to review.
While defendant’s two paragraph assignment provides legal citation pertaining to *909 the purpose of pretrial discovery, defendant does not specify which rules of discovery were violated, nor does he provide, with citation to the record, the law concerning mistrials or motions for new trials, or the facts pertaining to the alleged discovery violation upon which he contends a mistrial and/or a motion for new trial should have been granted. Specifically, the defendant asserts the following argument in his brief:
Here, the State did violate the rules of discovery as acknowledged by the Court itself. Furthermore, the defendant at trial was quite able to demonstrate significant prejudice to his case. Here, the defendant by the State’s action was lulled into a misapprehension of the actual strength of the State’s case-in-chief. The Court erred in both the denial of a New Trial and a Motion for Mistrial.
Under Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. State v. Tranchant, 10-459, p. 4 (La.App. 5 Cir. 11/23/10), 54 So.3d 730, writ denied, 10-2821 (4/29/11), 62 So.3d 108. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. State v. Lauff, 06-717, p. 9 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819.
Without knowing what was presented at trial to demonstrate the significant prejudice to defendant’s case, how the State violated the rules of discovery, or |39what action by the State lulled the defendant into a “misapprehension of the actual strength of the State’s case-in-chief,” the defendant has presented nothing for this Court to review on appeal.
Thus, we find that defendant has abandoned this assignment of error because it has not been adequately briefed.

ASSIGNMENT OF ERROR NUMBER SEVEN

THE DISTRICT COURT ALLOWED FOR IMPROPER JOINDER OF OFFENSES.

DISCUSSION

Defendant argues that the two offenses charged in the bill of information should have been severed for trial pursuant to LSA-C.Cr.P. art. 495.1. Specifically, defendant asserts that his two prior felony drug convictions would not have been admissible in the State’s case-in-chief on count two, cocaine possession, as it was in the State’s case against him on count three, possession of a firearm by a convicted felon.
The State, in response, requests that this Court strike defendant’s seventh assignment of error pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, which allows the court the discretion to disregard any argument set forth in an appeal brief in the event suitable reference to the record is not made. Here, the State asserts that defendant failed to make suitable reference to the record, thus, warranting the striking of this assignment. The State further argues that defendant’s assignment is not properly before this Court under LSA-C.Cr.P. art. 495.1 and 841, requiring that any objection to the misjoinder of offenses be made in a motion to quash, which has not been filed in this case.
|40In the present matter, defendant did not file a motion to quash the bill of information on the basis of misjoinder of offenses, as required by statute. See LSA-C.Cr.P. art. 495.
LSA-C.Cr.P. art. 493 governs the join-der of offenses in the same indictment or information and provides:
*910 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
LSA-C.Cr.P. art. 495 provides that the objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment. Where a defendant fails to file a motion to quash the indictment or information, the defendant has been deemed to have waived any objection to the misjoin-der of offenses. State v. Favors, 09-413 (La.App. 5 Cir. 11/10/09), 28 So.3d 433, 441.
The Louisiana Supreme Court in State v. Mallett, 357 So.2d 1105 (La.1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979), addressed the failure to file a motion to quash when joinder of offenses was later argued on appeal. The Supreme Court held:
The prohibition against misjoinder of offenses and improper consolidation of offenses for trial is grounded on the possible prejudice arising from a single trial on two or more offenses. The defects are not jurisdictional nor do they constitute a denial of due process. Hence, misjoinder of offenses may be waived by the failure to timely assert it by a motion to quash, and improper consolidation of offenses for trial may be waived by the failure to object, (citations omitted).
In the instant case, the record reflects that the defendant was charged by bill of information with one count of possession of cocaine in excess of 200 grams, but 141less than 400 grams, and one count of being a felon in possession of a firearm. The record, however, is void of any indication that defendant filed a motion to quash the bill of information in an attempt to obtain a severance of his offenses for trial. Thus, because the defendant failed to file a motion to quash the bill of information based on the misjoinder of offenses, we find that he waived any objection to the error under LSA-C.Cr.P. art. 495. See also State v. Collins, 04-255 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, writ denied, 04-2798 (La.3/11/05), 896 So.2d 62.

ASSIGNMENT OF ERROR NUMBER EIGHT

THE IMPOSITION OF THE MAXIMUM SENTENCE FOR BOTH OFFENSES WAS UNDULY HARSH AND LEGALLY EXCESSIVE.

ASSIGNMENT OF ERROR NUMBER NINE

THE DISTRICT COURT ERRED IN THE DENIAL OF THE MOTION TO RECONSIDER SENTENCE.

DISCUSSION

Defendant contends that his 60-year sentence for possession of cocaine in excess of 200 grams, but less than 400 grams, and 30-year sentence for his conviction pertaining to possession of a firearm by a convicted felon are excessive. Specifically, defendant contends that his sentences are excessive because the defendant’s criminal history includes two drug convictions and one conviction for unauthorized entry into an inhabited dwelling, and no crimes of violence. Therefore, the defendant maintains that he does not fall within the category of the most egregious violators. Moreover, because the evidence introduced at trial failed to prove actual or constructive possession of narcotics or *911 weapons, the defendant asserts that his sentence is excessive.
The State responds that the trial court properly sentenced defendant within the legislatively mandated sentencing ranges. Specifically, as a quadruple offender [42as to count two (possession of cocaine), the defendant faced a sentencing range of 30 years to life imprisonment. Additionally, as a double offender as to count three (possession of a firearm by a convicted felon), the defendant faced a potential sentencing range of 10 to 40 years imprisonment. Thus, under the habitual offender statute, LSA-R.S. 15:529.1, the court’s imposed sentence was not excessive, and the trial court did not err in denying defendant’s motion to reconsider sentence.
In the present matter, the defendant is proeedurally barred from challenging his sentence. LSA-C.Cr.P. art. 881.1 provides:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Pursuant to Article 881.1, this Court has found that defendants who fail to file the proper motion to reconsider sentence are precluded from raising, on appeal, issues regarding their sentences. See, State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642; State v. Hutson, 613 So.2d 1134 (La.App. 5th Cir.1993); State v. Carter, 609 So.2d 261 (La.App. 5th Cir.1992); State v. Collins, 606 So.2d 585 (La.App. 5th Cir.1992); State v. Mims, 619 So.2d 1059 (La.1993).
|4SThe record in the instant case reveals that, although defendant filed a motion to reconsider sentence based on his original conviction, which was heard and denied prior to defendant’s re-sentencing pursuant to LSA-R.S. 15:529.1, he did not object or file a new motion to reconsider after vacation of his prior sentence and imposition of his new sentence on March 25, 2010.[22]
*912 Where a new sentence has been imposed following vacation of a prior sentence, the defendant is required to file a new motion for reconsideration of sentence in the trial court, in order to preserve appellate review of the newly-imposed sentence. State v. Evans, 09-477, p. 11 (La.App. 5 Cir. 12/29/09), 30 So.3d 958, 965, writ denied, 10-0363 (La.3/25/11), 61 So.3d 653. The court cannot assume that the defendant’s objections to the earlier sentence are equally applicable to the new sentence imposed. Id. Here, since defendant did not file the required motion to reconsider sentence or lodge an objection after this newly-imposed sentence was imposed, defendant is procedurally barred from having his challenge to his new sentence reviewed by this Court on appeal.

\uERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). We note the following errors patent.
First, the commitment from defendant’s original sentencing does not reflect that the trial court imposed the mandatory fine. The transcript from the original sentencing, however, indicates that defendant was sentenced to pay a fine of $300,000, as to count two under LSA-R.S. 40:967(F) and a $1,000 fine, as to count three under LSA-R.S. 14:95.1. Ordinarily, the commitment must be corrected to accurately reflect the fine imposed. State v. Watson, 993 So.2d 779, 08-214 (La.App. 5 Cir. 8/19/08). However, the trial court vacated the defendant’s original sentence as to counts two and three and properly re-sentenced defendant pursuant to the habitual offender statute, LSA-R.S. 15:529.1. Since LSA-R.S. 15:529.1 does not authorize a fine, no corrective action is required.
Next, it is noted that the record indicates that the bill of information was amended on the morning of trial to include a second predicate offense pursuant to defendant’s LSA-R.S. 14:95.1 charged offense. It appears that the handwritten amendment is neither dated nor signed. However, no objection was made to the form of the amendment, and it has been established that the oversight of a district attorney in not signing an indictment is not fatal to it. State v. Williams, 107 La. 789, 32 So. 172 (1902); State v. Murphy, 166 La. 21, 116 So. 579 (1928).
Moreover, the technical sufficiency of the bill of information may not be questioned after conviction where the accused has been fairly informed of the charge against him, has not been prejudiced by surprise or lack of notice, has not raised an objection to the bill prior to the verdict, and is protected against further prosecution by examination of the pleadings and the evidence on the present *913 | ^conviction. State v. James, 305 So.2d 514 (La.1974); State v. Butler, 41,985 (La.App. 2 Cir. 6/20/07), 960 So.2d 1208, writ denied, 07-1678 (La.5/9/08) 980 So.2d 685. Here, the court attempted to re-arraign defendant on the amended bill of information but defendant waived the reading of the amended bill and entered a plea of not guilty. Additionally defendant was not surprised by the lack of notice as addressed in detail in response to defendant’s assignment of error number three. Therefore, we find that no corrective action is necessary.
Finally, a review of the record reveals that defendant was not advised of his right to remain silent prior to the habitual offender hearing. LSA-R.S. 15:529.1(D)(l)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. State v. Johnson, 432 So.2d 815, 817 (La.1983); State v. Walker, 01-348 (La.App. 5 Cir.8/28/01), 795 So.2d 459, 463, writ denied, 01-2788 (La.10/4/02), 826 So.2d 1115. Generally, the failure of the trial court to advise the defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant’s habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the defendant. State v. Knight, 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 949. However, when the guilt of the defendant is proven by his own stipulation or admission to the habitual offender bill of information without having been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error. Id. (See also, State v. Bell, 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87.).
Lfiln this case, the record indicates that the defendant waived the reading of the habitual offender bill and entered a plea of not guilty, satisfying the requirement of R.S. 15:529.1(D) that the trial court “require the offender to say whether the allegations are true.” The record however is void of any indication that defendant was ever advised of his right to remain silent. However, we find this error to be harmless since a formal hearing was held at which the State proved defendant’s habitual offender status by competent evidence offered by the State.[23] Therefore, we find no corrective action is necessary.
DECREE
Based upon the foregoing reasons, defendant’s convictions and sentences are affirmed.

AFFIRMED

. The predicate offense in relation to this charge as referenced in the bill of information indicates that defendant was previously convicted of LSA-R.S. 40:967(A), case number 97-07, Division "S”, 24th Judicial District Court, on July 30, 1997. On the date of trial, the State amended the bill of information to include a second predicate offense for which defendant was convicted of possession of cocaine in violation of LSA-R.S. 40:967(C), case number 426-892, Section "H”, Criminal District Court for the Parish of Orleans, on October 16, 2002.

. Defendant’s motion for new trial was based on 1) an alleged discovery violation learned at trial, 2) the denial of defendant’s motion for continuance based on the State’s amendment to the bill of information, and 3) the re-opening of the motion to suppress hearing.

. Of note, defendant’s motion for appeal was premature when it was filed after his convictions and imposition of the original sentences but before the multiple offender adjudication and re-sentencing. However, defendant’s subsequent re-sentencing after his multiple offender adjudication cured this procedural defect. See State v. Davis, 07-544, p. 3 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 63 n. 1, writ denied, 08-380 (La.9/19/08), 992 So.2d 952.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The narcotics field test performed on the substances seized tested positive for cocaine. Additionally, the narcotics evidence, the scale, and the firearms were tested for fingerprints: however, no usable fingerprints were obtained.

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed before defendant’s other assignments. See also State v. Nguyen, 05-569, p. 6 (La.App. 5 Cir. 2/3/06), 924 So.2d 258, 262.

. See also State v. Jones, 09-688 (La.App. 5 Cir. 2/9/10), 33 So.3d 306, finding the evidence was sufficient to establish that the defendant had dominion and control over the apartment to constitute constructive possession and awareness of the drugs and gun seized. In Jones, this Court found that although the defendant's name was not on the apartment lease agreement, a search of the apartment yielded the following: male clothing, a Wal-Mart picture envelope with defendant's name, a jacket with cocaine, a credit card and identification card in defendant’s name, a cell phone bill matching the cell phone found in. the vehicle defendant was driving, pictures of the defendant with kids, and various mail addressed to the defendant. Furthermore, the defendant had been in possession of the key to the apartment, which was on the key ring with the key to the car defendant was driving.

.Additionally, guilty knowledge of the contraband can be inferred from the testimony of Officer Dixon who presented a disclaimer form to the defendant on which the defendant indicated that the $10,000.00 seized from the Kentucky Avenue home did not belong to him but rather, indicated, that "it was for his brother,” who was going to use it to buy a car.

. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. Martin, 788 So.2d at 10-11.

. The defendant’s mother testified that her son has been married to Sharon Robinson for 24 years, and that they have two children.

. The record does not reflect that defendant’s motion to suppress the identification was disposed of prior to trial. However, it is well established that a defendant waives all pending motions by permitting trial to proceed without raising the issue that his pretrial motions were neither heard nor ruled upon. State v. Thomas, 08-1171, p. 5 (La.App. 5 Cir. 4/28/09), 13 So.3d 595, 599 (citing State v. Fletcher, 02-707, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 557, 559, writ denied, 03-0409 (La. 10/10/03), 855 So.2d 334).

. On cross-examination, Lieutenant Jewell admitted that other than his own report, he had not tape recorded or obtained written documentation that evidences the fact that defendant agreed to have his automobile searched.

. Defendant did not specifically enunciate in his brief that the statement at issue concerns the address defendant provided to the police at the time of his arrest; however, it can be surmised by the fact that it was the only "statement” ever given to police by the defendant.

. Within this assignment of error, defendant contends that it was reversible error for the trial court to re-open the suppression hearing, however, defendant did not brief this argument. Thus, pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, defendant’s argument may be deemed abandoned. However, even if defendant had briefed this issue, it is well established that a trial judge has discretion as to whether to permit a second suppression hearing or to re-open a suppression hearing prior to trial. State v. Cole, 434 So.2d 1103 (La.1983). Moreover, it is noted that regardless of whether the suppression hearing was re-opened to allow further testimony from Lieutenant Jewell, he testified at trial in detail that the defendant was advised of his Miranda rights, which this Court may consider on appeal.

. At trial, Lieutenant Jewell stated: "We advised him that he was under arrest for his attachments and his constitutional rights as per Miranda. Those rights are, before we ask you any questions, you must understand your rights. You have the right to remain silent, anything you say can and will be used against you in court. You have the right to talk with a lawyer for advice before we ask you any questions, and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. And if you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer.”

. At trial, Lieutenant Jewell’s testimony was further corroborated by Detective Dufrene who testified that he was present when Lieutenant Jewell advised defendant of his Miranda rights.

.Defendant’s sole argument as to his assignment of error regarding the denial of his motion to suppress evidence is that "since the statement formed the basis of the Application for Search and was illegally obtained, the Motion to Suppress Evidence should have been granted.” First, without further support for this argument regarding the denial of his motion to suppress evidence, defendant's assignment may be deemed abandoned pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal. Second, since defendant’s only argument that his motion to suppress evidence should have been granted is based on an "illegally obtained statement” which formed the basis of a search warrant, we find that because defendant’s statement was not illegally obtained, defendant’s argument lacks merit.

. See discussion regarding sufficiency of evidence, defendant's Assignment of Error Number 5.

. State v. Prieur, 277 So.2d 126 (La.1973).

. The State’s notice of intent to use other crimes listed three crimes which the State intended to use at trial: 1) Case No. 97-0007, 24th Judicial District Court of Jefferson Parish, alleging that defendant violated LSA-R.S. 40:967(A) on July 12, 1996, and pleaded guilty as charged on July 30, 1997. This conviction was the conviction originally set forth in the original bill of information as the predicate offense to defendant’s LSA-R.S. 14:95.1 charge; 2) Case No. 97-3810, 24th Judicial District Court of Jefferson Parish, alleging that defendant violated LSA-R.S. 40:967(A) on May 12, 1997, and pleaded guilty as charged on July 30, 1997; and 3) Case No. 426-892, Criminal District Court for the Parish of Orleans, alleging that defendant violated LSA-R.S. 40:967(F)(1), on December 18, 2001, and pleaded guilty to the reduced charge of LSA-R.S. 40:967(0(2) on October 16, 2002. This conviction is the conviction that the State amended the bill of information to reflect. It is also noted that on the morning of trial, the State notified the court that it was withdrawing its previously filed Prieur notice and, thus, would not be using the second conviction listed in its previously filed notice of intent, at trial.

. It should be noted that defendant did not file a written motion for a continuance pursuant to the requirements set forth under LSA-C.Cr.P. art. 707; however, there is a jurisprudential exception to the requirement for a written motion where the circumstances producing the motion occur unexpectedly, and there is no opportunity to prepare the motion. State v. Bartley, 03-1382, p. 4 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 567, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006 (citing State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 68, writ denied, 98-264 (La.6/19/98), 719 So.2d 481). Thus, considering that defense counsel was, for the first time, made aware of the State's intent to amend the bill of information on the morning of trial, we find that the circumstances producing defendant's motion occurred unexpectedly, and thus, decide to address the merits of defendant's assignment of error.

. Defendant was found guilty as charged on March 11, 2010. On March 16, 2010, defendant was sentenced. Subsequently, the State filed two habitual offender bills of information, which were set for hearing on March 25, 2010. On the morning of defendant’s habitual offender hearing, defendant filed a motion to reconsider sentence which was heard by the trial court prior to the hearing. The following colloquy took place between the trial court and defense counsel:
THE COURT:
Alright. Let’s — alright. Before we proceed with the bill. You filed a motion to reconsider the sentence?
MR. NETTERVILLE:
That's been filed. That’s correct.
THE COURT:
Alright. We need to address that first, right?
MR. NETTERVILLE:
*912 I would assume. I'm not sure it has to be addressed before, it just has to be filed before then. But if you wish to address it now, that's fine. We’re going to submit it on the motion.
[[Image here]]
THE COURT:
Alright. I think the sentence is appropriate for the reasons annunciated at sentencing. So, the motion to reconsider is denied. Now where are we with the bill? You’re billing him on?
The State then put on evidence regarding defendant’s habitual offender status. Pursuant to LSA-R.S. 15:529.1, the trial court found defendant to be a quadruple offender as to count two, and a double offender as to count three, vacated his original sentence and resentenced defendant. No new motion to reconsider sentence was filed, nor was an objection to the new sentence lodged by the defense, after the habitual offender sentence was imposed.

. At the habitual offender hearing, Aischa Prudhomme testified on behalf of the State. Prudhomme matched the fingerprints that were taken of defendant on the day of the hearing to the fingerprints taken in connection with defendant's three prior convictions, case nos. 97-007, 00-2155, and 426-892, proving defendant's habitual offender status. Moreover, the State proved that defendant’s actual discharge from his predicate convictions fell within the requisite 10-year period.